No. 34.—The Water-Lot Company of the City of Columbus, plaintiffs in error, vs. WM. BUCKS and JOHN G. WINTER, defendants in error.

[1.] The Water-Lot Company of the City of Columbus conveyed by deed to defendants, a piece of ground, upon condition that the bargainees should be restricted to the privilege of erecting and running a saw-mill or saw-mills, on said premises. *Held*, that a Court of Equity will not restrain, by injunction, the owners from using the building on said lot of land, for other purposes than those mentioned in the deed, after they have incurred considerable expense in the construction thereof, or compel them to stop the machinery already in operation—no sufficient excuse being rendered by the Company, in their failure or neglect in not applying at an earlier period.

In Equity, Muscogee Superior Court, decided by Judge ALEXANDER, 1848.

The facts are disclosed fully in the opinion of the Court.

COLQUITT & WELLBORN and JONES, BENNING & JONES, for plaintiffs in error.

I. If the facts sworn to in the bill show that irreparable mischief *will* or *may* accrue to the interest of the complainant, or that he may be interrupted in the just enjoyment of his property, such a case is made out as will warrant the interference of a Court of Equity. 2 *Story, E. J. sec.* 925 *to* 929.   1 *Kelly* 9, 11.

The following facts are shown by the bill:

That the defendants in consideration of a reduction in the price of the property purchased, agreed and covenanted not to use such property but for certain purposes mentioned in the deed, and that this covenant they have violated.

That the property of the complainants being the *water power*, is of such a character that any *use* of it in violation of complainants rights, secured by covenant as aforesaid, is a *destruction* of the property of the complainants, the amount and value of which cannot be properly estimated, and is of a consequence, *irreparable.*

That the violation by the defendants of their covenant, is of a continuing nature, and such as are repeated daily, furnishing the complainant with new cause of action, to remedy which their actions at law would give only partial relief. 2 *Story, E. J. sec.* 926; and would ruinously involve the parties in *vexatious litigation,* and render a multiplicity of suits unavoidable—to prevent

which, is one of the original grounds of equity jurisdiction. 1 *Story, E. J. sec.* 64 *K.* 2 *Ib. sec.* 930. *Ib.* 751.

That the during the pendency of the actions at law, the danger from fire caused by the infraction of the covenants, and the trespass complained of by the complainants, still continue to impair the value of the other property of the complainants, which injury is not the subject of damages at law, but which equity, having once obtained jurisdiction of the case, will the more readily interfere to correct.

II. That the only relief which, under the circumstances, equity can grant, that is *plain, adequate,* and *complete,* is by injunction to compel *specific performance,* and that a Court of Equity has power to grant such injunction, and should exercise such power, is established by the following authorities: *Drury on injunction* 260. 10 *Ves.* 192. *Rankin vs. Huskinson,* 4 *Simons,* 13. *Hills vs. Miller,* 3 *Paige,* 254. *Barrow vs. Richards,* 8 *Paige,* 351. *Earl of Mexborough vs. Bower,* 7 *Bevan* 29 *E. C. R.* 127.

III. All presumption of acquiescence arising from lapse of time is restricted by the allegation in the bill; and the delay is satisfactorily explained. *Drury on Inj.* 294. *Greenough vs. the M. & B. Railway Co.* 1 *Railway cases,* 242.

H. HOLT for defendant in error.

The defendants in error insist that the Judge of the Chatahoochee Circuit did not err in refusing the injunction, prayed for by the complainant :

1st. Because Equity will not relieve by injunction, or otherwise, against breach of covenant or violation of contract, where the damages are ascertainable and recoverable at law.

2. Because Equity will not take jurisdiction in case of trespass, or even of waste, except to prevent irreparable mischief.

3. Because Equity will not interfere with or restrain the use of a work or improvement of value, and which is completed— that the process of injunction is preventive, not remedial, and while in a proper case it may be used to prevent the doing of an act, even such as that of which the complainant complains, it is never used to restrain the use of, or pull down, that which is completed.

4. Because the complainant is not entitled to an injunction,

because of laches in presenting the application, of acquiescence in the things complained of, until their full completion and enjoyment by the defendants.

5. Because the complainant does not make such a case by his bill as will justify a Court of Equity to interfere by injunction, and in support of the foregoing positions, cites the following authorities : 2 *Story Eq. Ju. sec.* 901, 926, 7, 8, 9, 959. 2 *Ves. & B.* 302. 3 *John. Rep.* 566. 16 *Ves.* 338, 242. 2 *Swanston, Ch. Rep.* 336. 10 *Ves.* 193. 2 *Brown, Ch. Rep.* 64. 1 *Ib. notes to page* 588. 7 *Ves.* 305. 13 *Ib.* 326. 17 *Ib.* 281. 18 *Ib.* 515. 19 *Ib.* 143. *Drury on Injunction,* 260, 190, 294. *Edm. do. do.* 212, 214, 112, 113. 3 *Paige,* 213, 254. 8 *Ib.* 315. 6 *John. Ch. Rep.* 46, 496. 1 *Ib.* 274, 318, 370. 7 *Ib.* 315. 5 *Ves.* 688. 3 *Cowen,* 445, 505. 5 *Porter,* 299. 6 *Eng. Ch. Rep.* 7. 11 *Ib.* 392. 29 *Ib.* 127. 4 *Simons R.* 13. 1 *Mylne & Craig,* 480, 481. 1 *Tann. and Russell, R.* 18. *Angel & Ames on Corporations,* 274.

*By the Court.*— LUMPKIN, J. delivering the opinion.

[1.] The water-lot company of the city of Columbus, on the 16th February, 1847, conveyed by deed to defendant, Wm. Brooks, a piece of ground at the South-West corner of the canal of said company, constructed in the bed of the Chattahoochee river, for supplying water to the water-lots of Columbus.' The grant of said piece of ground was subject to the condition, that the purchaser should be " confined and restricted to the privilege of erecting and running a saw-mill, or saw-mills, on said lot." The company presented their bill of complaint to the Hon. ROBERT B. ALEXANDER, Judge of the Superior Court of the Chattahoochee Circuit, and prayed for an injunction against the said William Brooks and John G. Winter, who had become interested in said property, alleging, among other things, that they were the owners of other lots, so contiguous to the defendant's ground, that a large wooden building on the latter, if on fire, would endanger buildings, to be erected on their said lots. That a fireproof building was not required by them, on said piece of ground, nor were the defendants restricted to any particular number of stories, in the building to be constructed thereon, for reasons set forth in the bill. That shortly after said conveyance, the defendants proceeded to erect a large wooden building, three stories

high, upon a high frame work, in which they have since formed another and a lower story. They state that the two upper stories, and the one in the frame work, are unnecessary and unusual for a saw-mill, or saw-mills, and that half of said building is located on the land of the complainants, and thus brought nearer to the contiguous lots owned by them; and the danger of fire therefrom greatly increased. That the defendants have not confined themselves to the restrictions contained in said deed of conveyance, but have placed, and are now running, not only a saw-mill, in said building, but a large amount of machinery for a variety of other purposes, and of a nature to increase the danger from fire. That the value of their contiguous lots is impaired, by the danger from fire, which might be communicated from the said three story wooden building, and the great quantity of combustible material therein. They complain that they are otherwise injured by the misappropriation of said piece of ground in this : That if the defendants confined themselves within the limitations of their deed, they would be compelled to place the great variety of machinery, now in operation on the saw-mill lot, on lot No. 15, which is a parcel of the same water-lot property, and now owned by the defendants; or to purchase of complainants another lot upon which to place it; and if placed upon lot No. 15, complainants would be able to sell another lot, to be used for the purposes to which lot No. 15 can now be appropriated. That defendants are owners, by purchase, of lot No. 15, of complainants, in the use and enjoyment of which they are no otherwise restricted, than that any building to be erected thereon, shall be fire-proof; and that complainants are under like obligation to the defendants, to erect on the contiguous lots owned by them, none other than fireproof buildings. They further state, that becoming more and more sensible of the injury inflicted on their property, by the violation, on the part of the defendants, of their contract of purchase, and after unavailing requests, upon defendants to confine themselves within the restrictions, by their deed of conveyance, they appeal to the extraordinary powers of a Court of Equity, and pray that the defendants be enjoined perpetually, from running any of the variety of machinery, in their building, on said piece of ground, not necessary to a saw-mill, or saw-mills, and from running said saw-mill on the land of complainants ; and from permitting so much of said building to remain standing, as is not necessary to a saw-mill,

Water-Lot Co. of Columbus, *vs.* Bucks and Winter.

or saw mills; and that defendants be compelled, specifically, to perform their contract in said deed of conveyance contained.

The following is a plot, or diagram, of the premises:

*Part trespassed upon.*

A previous bill between the same parties, was presented to Judge Alexander, praying an injunction, which he refused to grant. The learned and able opinion delivered by the Judge on that occasion, I have before me; and in justice to my own feelings, as well as to him, I must claim the privilege of here inserting it—

" The case made by the bill, rests upon two grounds, distinct in point of fact, and different in respect to the principles which regulate the jurisdiction of equity over them.

1st. A breach of covenant is complained of, and injunction prayed in the nature of specific performance.

2d. Relief is sought against an act of trespass upon land, and relief, as to both, prayed in the nature of an indirect order of the Chancellor, to abate the structure, which, in part, constitutes both the breach of covenant, and the trespass.

To dispose, first, of the second ground of complaint, in the bill. The jurisdiction of equity, in cases of trespass, is limited to such as are likely to be attended with irreparable injury. Equity expects a strong case of destruction, or irreparable mischief to be made out—of irreparable mischief which may be completely effected before any trial can be had at Law, as to the controverted right. *Eden on Injunc.* 139, *and cases there cited.*

The principle, as to trespass, says Mr. Drewry, in his learned and satisfactory treatise on injunctions, page 133, is that injunctions will be granted, when the tresspass is of such a nature as to be actually taking away, or destroying the substance of the estate, as in the case of timber, coals, mines and quarries. 6 *Ves.* 147. 7 *Ves.* 308. 15 *Ves.* 138. 10 *Ves.* 290. 17 *Ves.* 128. 18 *Ves.* 184. The rule is, that the jurisdiction of equity does not properly extend to cases of trespass, strictly so called, and cases in which she will interpose, are considered exceptions which the English Courts are unwilling to carry further. *Drewy*, 133, 134. The complainants do not show themselves within any of the exceptions recognised by the English Courts, nor by the Supreme Court of the State of Georgia. 1 *Kelly*, 10. It is not pretended that because of the " tardiness of the remedy, the peculiar nature of the property injured, the insolvency of the wrongdoers, or the inability of the complaimants to prove their damage," equity ought to interfere with her harsh but indispensable process of injunction, " to protect them in the use, integrity, and value of their property."

The case of *Deere vs. Gust*, 1 *My. & Cr.* 516, is a strong authority against the complainant's application on the point now under consideration. The complainant, in that case, was mortgagee in receipts of the rents of an estate in Wales, and the defendants being owners of the adjacent Iron Works, desiring to construct an iron tram-road, from their works to another place, and finding it convenient to cross the mortgaged estate, obtained permission of complainant's tenant, by a *false representation*, that they had the consent of complainant, and accordingly laid down a tram-road through the estate, in making and keeping up which, much damage was done to the estate. The complainant had no notice of the fact for three years, but *as soon as he had notice* of the existence of the tram-road, he proceeded to have it taken up, in which, he was forcibly interrupted by defendant's workmen,

and thereupon he filed his bill for an injunction to restrain the defendants from using the road, and from interrupting the complainant and his workmen. The defendant demurred, and the demurrer was allowed. The Lord Chancellor Cottenham said, in giving judgment, "the thing here complained of *has been done.* The tram-road has been completed, with the leave of the tenant in possession, and the Court is asked to restrain the defendants, who, having finished the work, are now in the daily use and occupancy of it. In other words, the Court is virtually asked to eject the defendants, and authorise the complainant to take possession. The case originally, may have been a case of waste—waste occasioned by the cutting of the tram-road, and the laying of the iron rails over the complainant's land ; but what is now claimed by the defendants, is simply right of way, and if they are not entitled to that right, they are mere trespassers, and the complainant has his proper legal remedy against them, as such." In the case before us, has not the thing complained of been done ? That is to say, have not the defendants already erected their building, or a part of it, on the land of the complainants ? and is not the Court virtually asked to eject them, and put the complainants in possession ? It seems, then, more consistent with the precedents, to leave the complainants to their appropriate remedy at law, in respect to this ground of complaint.

Upon the other and first ground—as to the power of this Court to interfere by injunction, to restrain breach of covenant, in the nature of a specific performance. Injunctions of this sort, are usually of two kinds, *( Eden on In.* 22,*)* both of which concern and seem to depend upon the relation of landlord and tenant, and therefore, not necessary to be further considered in the discussion of the question before us. There are *a few cases* which do not fall within the principles of either of the kinds referred to. The case of *Martin vs. Nutkin,* 22 *P. W.* 266, is the earliest it is said, in which Equity interfered to restrain breach of covenant by injunction. In that case, the defendants, the parson, church warden and overseers of the Parish entered into a written agreement with the complainants, that upon a certain consideration which had been performed by the complainants, the ringing of the bell at 5 o'clock, A. M. to the disturbance of the complainants, should be discontinued for the lives of the complainants, or the survivors of them. Lord Mecclesfield granted an injunction to stay the

322        SUPREME COURT OF GEORGIA.

Water-Lot Co. of Columbus vs. Bucks and Winter.

ringing of the bell until the hearing, and at the hearing, the in-
junction was continued during the lives of the complainants, and
the survivors of them." It hence appears that Equity will
interfere to execute a negative agreement, when according to the
judgment of the Vice Chancellor in the case of *Kimberly vs. Jen-
nings*, 6 *Sim*. 340, " it is simply such standing by itself." The
case put by his Honor, the V. Chancellor, was that a nephew,
wishing to go on the stage, his uncle gave him a large sum of
money in consideration of his covenanting not to perform within
a particular district; that the Court would execute such a cove-
nant, on the ground, that a valuable consideration had been paid
for it. The decision in the case of *Barrow vs. Richard,* reported
in *Paige's C. R. vol.* 8, *p.* 351, insisted upon by complainant's
counsel, as an authority applicable to the case before us, would
seem to go also, upon the same principle, the right of Equity to
restrain breach of agreement. The doctrine of specific perform-
ance in reference to breach of agreement by injunction, is sub-
ject to the qualification, that unless it appears that specific perfor-
mance of the *whole agreement* can be decreed, the relief will be
denied; and if the agreement is *negative*, it will be decreed to be
performed *only* when it stands by itself, not connected by a posi-
tive agreement which the Court cannot enforce. 6 *Sim.* 340,
333. And it is to be observed that in all the cases of this class in
which relief was granted, the agreement was a simple obligation,
*not* to do a particular thing, as in *Martin vs. Nutkin*, and where
the injunction may be said to have compelled its performance in
a. negative sense, by restraining its violation. The decision in the
case of *Morris vs. Coleman*, 18 *Ves.* 407, which at first view seems
an exception, is treated by Sir L. Shadwell in his judgment in
*Kemble vs. Keen*, 6 *Sim*. 333, as grounded on the consideration of
there being a partnership between the contracting parties. In
the case before us, it is not the agreement that defendants *shall
not do a particular thing*, but *to do only* a particular thing. The
prayer of the bill, is not that the defendants be compelled to do
an act, erect and run a saw mill, or saw mills, but that they be
restrained from doing other things, the running a variety of other
machinery. In the literal sense of the terms, we cannot effect,
by injunction, a special performance of this agreement, according
to the prayer of the bill. How far the principle of the decision
in the case of *Martin vs. Nutkin*, and in the case of the *Uncle vs.*

*the Nephew,* cited in *Kimberly vs. Jennings,* is applicable to this, is not necessary to be determined, since a more satisfactory disposition can be made of it on other grounds.  Conceding, then, for the present, the point of jurisdiction and the right of the Chancellor to interfere by injunction to restrain the breach of covenant in a case properly submitted, we are to inquire, do the complainants come with such a case, and in proper time to claim this extraordinary interposition of Equity.  The bill alleges that the defendants have violated their agreement, in that they have placed, and are now running, in addition to a saw mill on said lot, a large amount of machinery for a variety of purposes, none of which forms any part of a saw mill or saw mills.  No injury is shown to have resulted or likely to result to the complainants from the mere employment of the additional machinery, and the only benefit to follow to the complainants upon the injunction against its employment upon said lot, consists in the chance of selling in that event to defendants, another lot at a reasonable price.   The defendants have already placed, and are now running on the ground the large amount of machinery complained of.  The consequence to them, will probably be a serious pecuniary loss to be estimaed, it is true, only by reference to the great variety and expensiveness of their machinery, as enumerated by complainants in their bill.   The complainants stood by while their rights were infringed, and " after the thing complained of had been done," in the language of Lord Cottenham already quoted, they come to claim the aid of Equity to restrain the defendants.   In the case of *Brydges vs. Kilburn,* cited in *Jackson vs. Carter,* 5 *Ves.* 688, 691, in which a lessee having altered a log wood mill into a cotton mill, an application for injunction was refused, on the ground that the complainant had stood by, and seen the cotton mill erected; and in a late case, Lord Brougham refused an injunction even against waste, on the same ground.   The language of his lordship is emphatic and decisive.  " I am equally clear that the party complaining, has in this instance, by his own conduct, disentitled himself to relief.  If there be any thing well established in this Court, it is, that a man who lies by while he sees another expend his capital, and bestow his labor upon any work without giving him notice, or attempting to interrupt him—one who thus acquiesces in proceedings inconsistent with his own claims, when he comes to enforce those claims in this Court, shall in vain ask for

its interposition by injunction, of which the effects would be to render all the expenses useless, which he voluntarily suffered to be incurred. Here more years have been allowed to elapse *than the number of weeks* which would have closed the doors against the plaintiff's coming to seek an injunction. See also 18 *Ves.* 515. How long the complainants did stand by while the defendants were in violation of their agreement, does not distinctly appear in the case before us. It does appear that shortly after the purchase of said ground, (February, 1847,) the defendants proceeded to frame and erect a large building, three stories high, besides another story in the frame work, the frame work and first story of which, in the opinion of complainants, were all that was necessary, or convenient for a saw mill, or saw mills, and that the additional stories could not be used for such purposes without "absurdity in design." It is fair to presume that it was as well known to complainants then, as now, that such a structure was unnecessary and unusual for the purpose of a saw mill, or saw mills, and that they might reasonably have believed that the otherwise absurd number of stories were designed for other purposes than the uses of a saw mill or saw mills. Upon the question of laches, it may be worthy of remark, that the unnecessary number of stories in said building is now complained of as a breach of defendants' agreement, and that they proceeded to frame and erect them shortly after the 16th of February, 1847.. "Becoming *more and more sensible* of the injury inflicted upon them, by defendants' violation of their agreement," in every respect now complained of, the complainants come UPON DELIBERATION, with their application for injunction. As to what constitutes that degree of laches which will deprive a party of relief by injunction, no positive rule is stated. The authorities on the subject, it is said in *Drewry on Injunctions,* 197, support the proposition, that if the party is cognizant of his right, and does not take those steps which are open to him, before he has allowed the adversary to incur material expenses, or to enter into engagements difficult to be discharged, he will lose his right to the interposition of Equity. The conclusion follows, that the alleged breach of covenant being attended with no immediate damage to the complainants, and the injury to defendants, consequent upon the injunction prayed, probably great and immediate, the application must be refused, the more properly, because the complainants have forfeited their

title to the relief sought by delay, for which no satisfactory explanation is offered or attempted. It remains to be considered whether the prayer of the complainants ought to be allowed, "that the defendants be enjoined from permitting so much and every part of said building as may not be necessary for a saw mill or saw mills to remain standing." It is alleged that the defendants' building, besides being located in part on complainants' land, is of a height unnecessary and unusual, for a saw mill or saw mills, and therefore, the defendants have violated the true intent of their agreement. It is with greater earnestness, further alleged, that by the unnecessary height of said building, other buildings on the neighboring lots of complainants, when erected, will be endangered by fire, which may be communicated from defendants' building, and that the value of complainants' adjoining lots are thereby depreciated. It is not shown that the law any where defines the dimensions of a saw mill or saw mills, and in the absence of any stipulations between the parties as to the height of the buildings to be erected on defendants' ground, it must be held that nothing in this respect exists, which a Court of Equity can recognise as a breach of covenant. Assuming that defendants had the legal right to erect a building of indefinite height upon their own ground, and that to the extent that they located it on the land of complainants, they are mere trespassers, as already determined. What is the depreciation in value of the adjoining property, but *damnum absque injuria*, so far as any power exists in a Court of Equity to relieve against it ? The apprehended danger from fire is hypothetical, and dependent on the remote contingency of the future erection of fire-proof buildings on the adjoining property. The doctrine of nuisance cannot apply : 1st. Because Equity will not interfere to prevent a contingent nuisance. 3 *My. & K.* 169. But more especially for the reason that Equity does not interfere to prevent or remove a private nuisance, unless it has been erected to the damage of the right of another *long previously enjoyed.* 3 *Johns. Ch. R.* 282. The maxim *qui prior in tempore, potior est in jure,* will apply, if hereafter fire-proof buildings shall be erected in the neighborhood of the defendants' three story wooden house.

The application for injunction in any form is refused.

In the present bill, the complainants seek to relieve themselves from the effect of their delay, and apparent acquiescence, in the

326 SUPREME COURT OF GEORGIA.

Water-Lot Co. of Columbus vs. Bucks and Winter.

use and appropriation made by the defendants of the saw-mill lot and the building erected thereon. But after carefully examining the reasons which they assign, we are of the opinion that they are insufficient, either to excuse the supineness of the company, or to justify the Court in the exercise of a favor "manifestly indispensable for the purpose of social justice, in a great variety of cases; but at the same time, attended with no small danger, both from its summary nature and its liability to abuse."

Judge Story well remarks, that while this jurisdiction should be fostered and upheld by a steady confidence, still it ought to be guarded with extreme caution, and applied only in very clear cases; otherwise, that instead of becoming an instrument to promote the public as well as private welfare, it may become a means of extensive, and perhaps of irreparable injustice. And Mr. Justice Baldwin, in *Bonaparte vs. Camden & Amboy Rail Road Company*, 1 *Baldwin's C. C. R.* 218, makes the following striking observations on the same subject : " There is no power, the exercise of which is more delicate—which requires greater caution, deliberation and sound discretion ; or is more *dangerous* in a doubtful case, than the issuing of an injunction. It is the strong arm of Equity, that never ought to be extended, unless to cases of great injury, where Courts of Law cannot afford an adequate or commensurate remedy, in damages. The right must be clear, the injury impending or threatened, so as to be averted only by the protecting *preventive* process of injunction. But that will not be awarded in doubtful cases, or new ones, not coming within well established principles; for if it issues erroneously, an irreparable injury is inflicted, for which there can be no redress, it being the act of a Court, not of the party who prays for it. It will be refused till the Courts are satisfied that the case before them, is of a right about to be destroyed, irreparably injured, or great and lasting injury about to be done by an illegal act. In such a case, the Court owes it to its suitors and its own principles, to administer the only remedy which the law allows, to *prevent* the commission of such act."

In *Bacon vs. Jones*, 4 *Mylne & Craig*, 432, Lord Ellenham seems to conclude that the discretion of the Court, in dealing with injunctions, is unlimited. And I apprehend, after all, that this is the truth of the matter. He turns over the subject, and presents it in various ways, and says that the Court must exercise the best judgment it can, as to the most convenient course to be pursued.

Accordingly, in *Hilton vs. The Earl of Granville*, 1 *Craig & Phillips*, 283, the Lord Chancellor thus balances the argument: "I find, from the plaintiff's own showing, that the level was made in 1839. It might have been made for other purposes, purposes in which the plaintiff might not be interested; but then, he states that the workings have continued advancing toward his home, at a considerable distance, undoubtedly, at the commencement, 67 yards, but gradually proceeding toward his house; and that within a certain space of time, the works have approached within an ascertained number of yards from his house, the consequence of which has been injury to those houses under which the workings have been carried. It is only of late, that they have approached near to his house, and it is only of late, therefore, that any damage has been sustained by the houses near to his. But from the moment that the workings were commenced from the level, in the direction of the plaintiff's houses, he must have known that there was every probability, at least, that the working, if continued, would bring them in contact with the assertion of the Lord's right, and therefore make it necessary for him to apply for protection or compensation for the damage done. *No application is made, however, until the time when the workings have approached so near to his house, that it is quite impossible to grant an injunction, which shall continue until the legal right is ascertained, without altogether suspending the Lord's works.*

Under these circumstances, therefore, seeing the state in which the law appears to stand, without, however, expressing any opinion upon it, and considering that by granting the injunction, I shall be stopping the working of a mine, a thing which of all others this Court is most averse to do; (though it may, under certain circumstances, be compelled to do it;) considering, also, the great expense which has been incurred, and the great injury which, if the Court should turn out to be wrong, would be inflicted on the party claiming the right to work the mine; and, on the other hand, the nature of the injury, which the plaintiff may sustain, if he turns out to be right, I have to determine whether—balancing the question between these two parties, and the extent of inconvenience likely to be incurred on the one side and on the other—it is the most proper exercise of the jurisdiction of the Court to grant the injunction or to withhold it. Now by withholding it, I certainly may expose the plaintiff, not only

to damage, but to an injury and a wrong; by granting it on the other hand, I am exposing the defendant to what, in the event of my turning out to be mistaken in the view I take of the right of the parties, will be an irreparable injury. The plaintiff's injury, if he sustains it and ought not to have sustained it, will be to a great extent at least, capable of reparation; it is a mere question of the value of the property, which may be compensated; whereas, by no possibility can the injury done to the Lord be compensated, if he is prevented for a considerable length of time from exercising a right which, in a certain event, may turn out be his to the full extent to which he claims it."

By a process of reasoning like this, in a case almost pefetcly parallel in all its features, the Circuit Judge was induced to refuse this injunction. And after weighing the circumstances well, and reflecting especially that Equity will rarely, if ever, interpose for the removal of a work already executed at considerable expense, and the demolition or suspension of which would occasion great injury to the defendants, we are unwilling to control the exercise of a discretion, which, in our opinion, was wisely exerted.

If this application had been made at the proper time, my own impression is, that it should have been granted. Whereas the nature of the injury apprehended is such as to render it impossible to measure the amount in damages; or if the case be one in which any calculation of the amount of the injury must be purely speculative, the inclination of the Court has in general been either in cases of trespass or violation of contract, to protect the party by process of injunction. *Collard vs. Allison,* 4 *Myl. & Cr.* 487. *Ridgway vs. Roberts,* 4 *Hare,* 116, 117. *The Earl of Mexborough vs. Brown,* 7 *Beavan,* 127. The present is just such a case. Who can compute the mischief which may be entailed on complainants, in the sale of their remaining lots on account of the erection of this saw-mill building, and the filling of it from bottom to top, with a variety of machinery, in contravention of the express terms of the contract. But the motion comes too late. *Decre vs. Guest,* 1 *Mylne & Craig,* 516, is a much stronger case than this. There the Chancellor denied the injunction to restrain the owners of the rail-road from using it, although the possession of the land for the purpose of constructing the rail-road, was obtained from a tenant of the plaintiff, by means of circumvention and fraud.

The judgment below must be affirmed.