HELEN H. BRANDENBURG, Appellant, *vs.* ERIC LAGER,
Appellee.

*Opinion filed April 20, 1916.*

1. BUILDING LINES—*reasonable restrictions will be enforced in
equity.* Reasonable building line restrictions which are not con-
trary to public policy or some positive rule of law will be enforced
in equity, even though the enforcement of the restriction may not
be absolutely necessary to the complainant's enjoyment of the ease-
ment claimed.

2. SAME—*common understanding of the word "porch."* The
word "porch," as commonly understood, means a veranda, portico
or open passageway or appendage attached to the enclosed part of
a building, and does not include a projection which is part of the
main mass of the building.

3. SAME—*what cannot be called a porch.* A projection of heavy
masonry, the walls of which are ten feet high, continuous with the
outer walls of the building and solid, except for several windows
and a door, which door is to be the only front entrance to the
building, the space enclosed being intended for a vestibule and re-
ception hall and for a room which will be part of the so-called base-
ment of the building, cannot be regarded as a porch, within the
meaning of a deed excepting "bay windows, porches and steps"
from the operation of a building line restriction.

APPEAL from the Circuit Court of Cook county; the
Hon. THOMAS TAYLOR, JR., Judge, presiding.

JOHN T. RICHARDS, and ALEXANDER J. INNES, for ap-
pellant.

WILLIAM J. LACEY, and ALBERT R. GATES, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

Appellant filed a bill of complaint in the circuit court
of Cook county November 2, 1915, to enjoin appellee from
erecting an apartment building in violation of a building
line agreement hereinafter shown. On a hearing the prayer
for relief was denied and decree entered dismissing the bill
for want of equity. This appeal was perfected from that
decree.

From the oral testimony and stipulation of facts found in the record it appears that appellee was the owner of certain premises legally described therein, being a lot having fifty feet east frontage on South Shore drive, (formerly Yates avenue,) in the city of Chicago. Appellant owned one hundred feet frontage on the same (west) side of South Shore drive, in the same block. Lambert C. Wieland, the original owner of the entire east frontage of said block between Sixty-ninth and Seventieth streets, before selling and conveying any of this property, executed in 1910, and recorded in the recorder's office of Cook county in 1911, an instrument in writing, in which he provided, among other things, that no building should be erected on said premises, or any part thereof, for twenty-five years, to be used for business or factory purposes, and that no building erected thereon during said period should be built "nearer than thirty-five feet to the front or east line of said premises, [being the west line of Yates avenue,] bay windows, porches and steps excepted." The instrument further provided that these restrictions should be inserted in every deed of conveyance made by said Wieland and should be considered as covenants running with the land. The restrictions were inserted in the deed from Wieland to appellant and in the deed from William K. Young (who was a grantee of Wieland) to appellee. It is not contended that these building line restrictions are not binding on appellee. The only question is whether he has violated them in the building that he is constructing.

The facts with reference to appellee's apartment building, so far as they throw any light on the building restrictions here in question, are substantially as follows: The walls of said building are to be constructed of brick, stone and cement. The east line of the main part of the building is three inches west of said building line, (located thirty-five feet west of the west line of Yates avenue or South Shore drive,) at the northeast corner of said building, and

the east or front wall extends from the northeast corner of the building, south, nine feet ten inches. From this last point a substantial brick wall, with a cement foundation and stone water-table, extends east nine feet three and one-half inches; thence at right angles, south, seventeen feet eleven inches; thence at right angles, west, three feet eight inches; thence south nine feet one and three-eighths inches; thence at right angles, west, five feet seven and three-fourths inches; thence south, parallel to South Shore drive, nine inches, which last mentioned line is slightly west of the thirty-five-foot building line. In other words, this wall follows the lines of a structure which projects to the east in front of all but the north nine feet ten inches and the south nine inches of the main building, and which structure would be about nine feet three and one-half inches wide from east to west, except that there is what might be termed a rectangular indentation in the southeast corner, making the south portion of the structure narrower from east to west than the north portion. In front of that part of the projection which is five feet seven and three-fourths inches wide is located the front door or entrance into the apartment building. The walls of all parts of the projection which extend east of the building line are built of the same material and of substantially the same thickness as are the main walls of the building which lie west of the building line. The walls of the said projection extend ten feet two inches above the level of the sidewalk on South Shore drive. The north wall of the projection contains one window slightly west of the center, with a substantial window frame and heavy stone trimmings surrounding its upper three-fourths. The window contains a heavy and substantial stone window sill. In the east or front wall of said projection there are two windows similar in all respects to said north window. The south wall of the projection east of the building line is of solid brick and stone, without any openings. The only water-table in front of the building is

situated about the level of the sidewalk on South Shore drive and is continuous around the entire front of the building. On the inside of the doorway or entrance is a solid and substantial brick wall, extending from a point west of the building line, in an easterly direction, to the extreme easterly part of the projection,—that is, to a point twenty-five feet eleven and five-eighths inches west of the east line of said lot, or west line of South Shore drive. Said brick wall is built to the full height of the first story or so-called basement of the building. The last mentioned brick wall, extending east and west on the inside of the building, separates the entrance or hallway leading into the building from that part of the interior of the building north of the entrance. The interior of the building north of the east and west walls, as the same is designed to be constructed, is to be included in a room or rooms, and, under the present plan, unplastered, extending from the front or east wall of the projection to a point west of the building line and connecting with other rooms in the first floor or so-called basement of said apartment building. Provision is made in the plans and in the structure thus far erected for gas or electrict light fixtures in this front room from a point in the ceiling near the building line, intended to furnish artificial light to this room and that part of the first story or so-called basement. The main east wall of the building is designed to be carried upon a heavy steel beam from that point to the roof of the building, and it is planned to construct porches for each story immediately above the solid brick walls of that part of the projection north of the doorway above mentioned, which is to afford an entrance into the building. These porches are to be supported by brick columns at each of the corners, but the porches do not extend over that part of the projection which is planned to be the entrance to the building, the porches to be separated from the main building by what are commonly called French doors, opening into the main part of the building on each

272 — 40

floor. The roof of the first story or basement is intended
to serve as a floor for the porch of the next floor or the
story above, and so on with each of the floors, it being in-
tended that the roof of the building shall be extended so
as to form a roof over the upper one of said porches. The
spaces between the piers to be built at the corners of the
porches are intended to remain open and free from any ob-
struction, except that in summer screens will be placed in
said openings. No steps were to be built at the front of
the building. The only steps or stairs leading from the
street level to the floors above the first story or so-called
basement are situated on the inside of the building and lo-
cated twenty-three feet west of said doorway or front en-
trance. This doorway in the front wall of this entrance
will be the only front entrance to the building. The build-
ing is to be constructed to have three stories above the so-
called basement or first story. At the time of this hearing
the main outside walls of the building and of this projection
over the building line had been constructed to practically the
full height of the first story or so-called basement. Photo-
graphic exhibits and blue-prints in the record show very
clearly the facts just stated.

On this state of facts, about which there is practically
no controversy, it is clear that the so-called basement ex-
tends about ten feet east of the building line, being con-
structed of the same material as the rest of the main part
of the building; that the water-table on the main front
follows around the projection and the so-called vestibule;
that the entire front and the water-table are uniform, so
far as the manner of their construction is concerned; that
the walls of this projection are not divided from the walls
of the rest of the building at the building line or at any
other point; that the front part of the basement, extending
to the east wall of the projection, is a part of the basement
of the entire building; that the wall of this projection, up
to the joists where the so-called first floor porch is intended

to rest, is of the same material as the main front walls of
the building and contains three windows,—two in the east
or front wall and one in the north wall; that the walls
are built of masonry consisting of brick, and are one story
high, the front being finished in pressed brick, the same as
the entire front of the building, and having no opening (ex-
cept said windows) other than the door, which is the only
front entrance into the building; that this vestibule extends
back into the reception hall; that a heavy brick wall also
extends from the inside of the east wall of the projection
westward a distance of something like eighteen feet, form-
ing the north side of the vestibule and reception hall; that
the stairway leads to the upper floors in said building at the
west end of this reception hall, and from said hall a door
opens through a heavy brick wall at the north into the first
story of the building. Obviously, from these facts, the pur-
pose of the so-called foundation for porches is to enlarge
the area of the apartments of the first story or so-called
basement, and the whole plan of the building indicates that
this is the clear purpose, though this foundation also serves
as a support for the porches of the three upper stories.

Many authorities are cited with reference to building
line restrictions, to which we do not deem it necessary to
refer because the building line restrictions in those cases did
not have a proviso, such as in the restrictions here, that
porches, bay windows or steps might be built within the re-
served space. This court laid down this same rule as to
that class of cases in *Keith* v. *Goldsmith,* 194 Ill. 488, where
there was a similar exception as to porches and bay win-
dows as is found here. However, as this court has stated,
each case necessarily must depend upon and be decided
largely on its own special facts. (*O'Gallagher* v. *Lockhart,*
263 Ill. 489.) This case must be decided from the inten-
tion of the parties as to the meaning of the words "bay
windows, porches and steps," as used in the exception. This
intention is to be ascertained, as in other cases, from the

wording of the instrument containing the restriction it-
self, considered in connection with the circumstances exist-
ing at the time it was executed. (*Hays* v. *St. Paul Meth-
odist Church,* 196 Ill. 633; *Druecker* v. *McLaughlin,* 235
id. 367.) Numerous definitions are quoted from standard
authorities by counsel in their briefs as to the meaning of
the word "porch." While some lexicographers state that
a porch is an entrance or appendage to a building and may
be enclosed or unenclosed, and sometimes it is spoken of
as an entranceway or vestibule, the popular understanding
of a porch and definition of the same, especially as used
and applied in this country, is that it is a veranda, portico
or open passageway or open appendage attached to the en-
closed part of the building. The so-called porch may in
some cases be enclosed, yet if, from all the evidence, it ap-
pears that the projection is a part of the main building,
even though it is called a porch, it will be considered a
violation of the building restrictions such as we are here
considering. "No part of the main mass of a building may
properly be called a porch." (*Hieronimus* v. *Moran, ante,*
p. 254.) We have held that swell fronts or bay windows
which extend over the established building line and which
run up the whole height of the building from the basement
to the roof, and are on a continuous foundation with the
building, with continuous walls of the same material, are
substantial parts of the building. (*Curtis* v. *Rubin,* 244 Ill.
88; *O'Gallagher* v. *Lockhart, supra.*) Building restric-
tions which interfere with the free use of property are not
favored in law and doubts are generally resolved against
them. (*Hutchinson* v. *Ulrich,* 145 Ill. 336; *Eckhart* v.
*Irons,* 128 id. 568.) It is not necessary, however, in order
to justify the interposition of a court of chancery, that the
easement claimed be absolutely necessary for the enjoyment
of the estate granted. It is sufficient if it is a benefit.
(*Smith* v. *Young,* 160 Ill. 163; *Newell* v. *Sass,* 142 id.
104.) A general scheme or plan in the sale of lots, em-

bodied in the deed to every purchaser, even though there be
no further benefit stated than that which is necessarily im-
plied, of uniformity, will be enforced in equity. (*Wiegman*
v. *Kusel,* 270 Ill. 520.)   A restriction fixing a building line
as a part of a general plan for the benefit of all lots in a
particular locality gives to the purchasers of the lots a right
in the nature of an easement which will be enforced in
equity, and, upon equitable principles, against the grantee
of any particular lot.  (*Curtis* v. *Rubin, supra.*)  Restric-
tions that are reasonable and not contrary to public policy
or some positive rule of law will be enforced in equity.
*Turney* v. *Shriver,* 269 Ill. 164.

Two architects, each having had long experience, testi-
fied, one for appellant and one for appellee, as to whether
the parts of the building extending beyond the building line
here could properly be designated as porches.  Andrew San-
degren, for appellee, stated that he had had twenty-seven
years' experience in Chicago, New York and Boston and
had drawn many plans for apartment buildings; that he
examined these plans and that he would call the lower
part underneath the porches foundations to the porch; that
porches with solid foundations of that character had been
built in Chicago for years; that the covered vestibule or
entranceway would come within the definition of a porch.
He stated further, however, if he were asked to draw a
plan for a porch without any other instructions than the use
of the word "porch" he would understand that he was to
draw a plan for an open porch; that if the walls of this
projection extended as high as the top of the story above
the first or basement floor he would consider it a part of
the building, but that if it only extended up to the first
story window sills above this first story or basement he
would consider it a foundation for the porch.  John T.
Hetherington, an architect, testified for appellant that he
had designed many apartment buildings and was familiar
with the plans for this building; that the foundation of a

porch consisted usually of piers underneath and columns supporting the roof; that the entrance or vestibule or hallway was not commonly understood to be what is called a bay window, porch or steps; that he did not consider the walls of this projection the foundation for what would generally be understood to be a porch.

While the roof of the projection here in question forms a floor for a porch above, the admitted facts in this record show clearly that the first floor of this projection, called by counsel for appellee a basement, had all the characteristics of a room or substantial part of the apartment. The three windows furnished a light to this room, and if it were planned to build the first story of an apartment building the floor of which should be on the same level as the sidewalk, the outer walls of such first story would differ very little, if any, from the outer walls of this projection. The vestibule or entrance of the building at the southeast corner was also of the same substantial character as the rest of the building. In view of its construction, as shown in the description already given, we do not see how it could be called a porch. The porches above this first floor over the projection do not extend over the entrance or vestibule. The establishment of building line restrictions creates an easement for unobstructed air, light and vision for the benefit of the owners whose property is within the area of the building restrictions. (*O'Gallagher* v. *Lockhart, supra; Hartman* v. *Wells,* 257 Ill. 167; *Simpson* v. *Mikkelsen,* 196 id. 575.) The projection here in question enlarged the area of the basement, and while the room so made by it may be denominated a basement room, it is clearly an integral part of the building as is the entranceway or vestibule. The front walls are continuous from the basement up, extending practically a full story in height. Whether it be called a basement or first floor does not change its substantial character. What would be the practical purpose of building restrictions, even though they contained exceptions

such as here exist, if there were to be no distinction between
the porches or other projections and the foundation of the
main building? The purpose of establishing this restriction
would be defeated if the owners of lots should be permit-
ted to erect such structures beyond the building line as that
which appellee has planned to erect upon this lot. So far
as unobstructed light, air and vision should be taken into
account, this is as much a violation of the building restric-
tion to the height of substantially one story of the building
as it would be for that story if the front of the building
extended to its entire height on the eastern wall of the pro-
jection. The authorities in this as well as in other jurisdic-
tions are practically a unit in holding that appendages or
constructions of any nature which will practically frustrate
the intention of the parties to the building restriction will
not be permitted. See, among others, *Bagnall* v. *Davies,*
140 Mass. 76; *Attorney General* v. *Algonquin Club,* 153
id. 447; *Ogontz Land Co.* v. *Johnson,* 168 Pa. St. 178;
*Righter* v. *Winters,* 68 N. J. Eq. 252; *Supplee* v. *Cohen,*
81 id. 500; *Alderson* v. *Cutting,* 163 Cal. 503.

The appellee herein went to the husband of appellant to
secure a waiver of the building restrictions so far as ap-
pellant was concerned. This tends strongly to show that
the popular definition as to porches as given herein was the
definition and understanding of that word that the appellee
had in mind before beginning the construction of this build-
ing. Appellant refused to give this waiver. Appellee there-
fore had notice that no violation of the building restrictions
would be tolerated.

Under the reasoning of the decisions of this court in
the cases already cited, that part of the building here in
question, including the entrance or vestibule and all of the
projection which extends beyond the building line, was a
violation of the building line restriction.

The decree of the circuit court must therefore be re-
versed and the cause remanded to that court, with direc-

tions to enter a decree in accordance with the conclusions reached in this opinion, requiring appellee to remove that part of the structure extending over the building line or to so modify it as to make it come within the exceptions of said restrictions.

*Reversed and remanded, with directions.*