(No. 18470.—)

HELEN H. BRANDENBURG, Appellant, *vs.* THE COUNTRY CLUB BUILDING CORPORATION, Appellee.

*Opinion filed October 25, 1928.*

John T. Richards, for appellant.

Deneen, Healy & Lee, (Harry W. Lippincott, and Roy Massena, of counsel,) for appellee.

Mr. Justice Dunn delivered the opinion of the court:

Helen H. Brandenburg filed a bill in the circuit court of Cook county against the Country Club Building Corporation, which prayed for an injunction commanding the

defendant to remove, remodel or reconstruct so much of a nine-story apartment building which it had erected on its premises on the west side of South Shore drive, in the city of Chicago, as extended east of a building line established for such premises, so as to conform to certain restrictions to which the defendant's title to the premises was subject. The bill was answered, a replication was filed, the cause was heard by the court upon a stipulation of facts and oral evidence, and a decree was rendered dismissing the bill for want of equity, from which the complainant has appealed.

The appellant contends that the appellee was using its building for business purposes in violation of a restrictive covenant in its title, and that certain projections on the front of its building violated the building line restriction. The appellee takes issue on both these propositions, and further contends that the complainant has been guilty of such *laches* as to bar her right to relief. These are the issues to be determined in the case.

The property involved is situated on the east half of the block between East Sixty-ninth and Seventieth streets, on the west side of the South Shore drive, of which the appellant owns the north 100 feet and the appellee the north 160 feet of the south 350 feet. The whole half block was owned on and before December 20, 1910, by Lambert C. Wieland, who on that date executed an instrument in writing reciting that whereas he was the owner of the premises, was about to make conveyances of parts of them and desired to establish certain restrictions relating to the use of the premises which should be uniform and should bind him and all future owners and occupants of the premises and each and every part thereof for twenty-five years from the date of the instrument, he did therefore, in consideration of the premises and for the mutual benefit and protection of himself and of all future owners and occupants of said premises and each and every part thereof, "establish and create the following restrictions to be in force for the period of

twenty-five years from the date hereof and no longer, to-wit: (1) No building of any kind shall be erected on said premises or any part or parts thereof during said period of twenty-five years to be used for business, factory or warehouse purposes, intending hereby that said premises and each and every part thereof shall be used for residence purposes only during said period. (2) That no building which may be erected on said premises or any part or parts thereof during said period of twenty-five years shall be built nearer than thirty-five feet to the front or east line of . said premises, (being the west line of Yates avenue,) bay-windows, porches and steps excepted. It is further declared that the foregoing restrictions shall be inserted by the undersigned in each and every deed of conveyance to be made by the undersigned in relation to said premises or any part or parts thereof, and that said restrictions shall be considered as covenants running with the land and shall bind the undersigned and his heirs, executors and administrators and all future assigns of said premises or any part or parts thereof during said period of twenty-five years." The instrument was afterward recorded, and the restrictions mentioned were inserted in the deed of a part of the premises afterward made by Wieland to the complainant and in the deed of the part of the premises now owned by the defendant afterward made to Alvin H. Reed, from whom by *mesne* conveyances the defendant claims title.

The appellant built a two-story brick house on her property on the corner of East Sixty-ninth street and South Shore drive, formerly Yates avenue, the front main wall of which is about 45 feet west of the west line of South Shore drive, with an open porch extending to the building line. On the next 100 feet of the block south of the complainant's property are two three-story brick apartment buildings whose front walls are about 36 feet from the west line of South Shore drive. Immediately south of this 100 feet is the lot of the appellee, 160 feet wide, fronting on South

Shore drive. In the spring of 1925 the appellee began the erection of an apartment building upon its lot covering the entire width of the lot. The building was completed in April, 1926. It is nine stories high, contains 175 apartments and cost $800,000 to build. There was evidence tending to show that the land was worth from $1000 to $1750 a front foot for apartment building purposes. The building is constructed of brick and terra cotta upon a reinforced concrete frame. The front wall of the central part of the building is back of the building line, which is 35 feet from the west side of South Shore drive. This part of the wall is 47 feet and 10 inches long, and from each end of it, at a right angle to it, the wall runs to the building line. From these points the building extends north and south to the north and south lines of the appellee's property. There are four projections extending from the building east 10 feet beyond the building line, two from the north half and two from the south half of the building, each 14 feet long, 10 feet wide, and of the full height of the building. The front of the building, including the four projections, as completed, is built of concrete, brick and terra cotta. The entire east front of the building, including the projections, is of the same type of construction. The water-table or base of the east front of the building is terra cotta and is continuous along the front of the building, including the projections. The roof of the building extends over and forms the roof of the projections. The fire-wall extends about three feet above the roof, and is continuous around the north, south and east sides of the building and the projections. In each of the projections there is on each floor one window in the north side, one window in the south side and two windows in the east side, or front, the dimensions of each of the windows being three and a half feet wide by five feet eleven and a half inches high. They are ordinary windows and occupy not more than one-fourth of the area of the wall of the projection and little more than one-

third of its lineal extent. On each floor the space within each projection forms a part of a room extending west from the back of the projection. The front wall of the building and the walls of the projections are substantially alike—of brick around concrete columns, the brick wall being thirteen inches thick. The brick used in the front wall between the projections and on the projections are the same, and in the construction of the building all the columns and cross-beams were built before the brick was laid, and they were allowed to stand and harden. The columns and beams were finished about November 1, 1925. The brickwork was started before the concrete work was completed to the roof, and the laying of brick on the front of the building was commenced about the middle of August, 1925.

The appellee maintains a restaurant in the building, where tenants of the building may have their meals, and the service of the restaurant is available to transients also. The income from it amounts to about $30 a day. There is also a small shop for the sale of cigars, newspapers and magazines. The restaurant and shop open into the lobby of the building, but neither of them has an opening on the street. On the east wall of the building is this sign: "Country Club Apartment Hotel. Residential. Transient. Restaurant. Apartments available." At the northwest corner of Seventieth street and South Shore drive a bill-board erected by the appellee carries the sign, "Parking space reserved for patrons of the hotel and restaurant.—Country Club Apartment Hotel, 6930 South Shore Drive, Plaza 2200." It was also shown that there was a hotel desk in the lobby. From these circumstances it is claimed that the premises, or part of them, were being used for business purposes, in violation of the restrictive agreement prohibiting such use.

The erection, management and control of an apartment building is not a breach of the covenant restricting the purposes for which the premises may be used. (*Hutchinson* v.

*Ulrich,* 145 Ill. 336; *Voorhees* v. *Blum,* 274 id. 319.) The incidental maintenance of a dining room and cigar and news-stand for the accommodation of the tenants, and of an office for the conduct of business with them, cannot be said to be a use for business purposes outside of the business of conducting and operating the apartment building. The fact that the building was advertised as an apartment hotel, "residential, transient, restaurant," and that parking space was reserved for patrons of the hotel, does not, of itself, show that a hotel was being conducted in the premises or that they were used for business purposes other than the legitimate operation of an apartment building within the meaning of the restrictive covenant. These things constitute an advertisement and an invitation to the public to use the hotel service offered, but they do not of themselves sustain the allegation of the bill that the building is occupied as a hotel and restaurant, which are operated by the defendant in violation of the covenant establishing the restriction. Nor is such allegation proved by evidence of a single instance or occasional instances of service rendered to a person who is not a tenant or a guest of a tenant but a transient visitor.

The appellee contends that the four projections in front of the building line are bay-windows, and its architect, Eric E. Hall, testified they were bay-windows. Webster's Dictionary defines a bay-window as "a windowed bay or recess in a room, projecting outward from the wall, either in a rectangular, polygonal or semi-circular form." The Standard Dictionary defines it as "a window structure of angular plan, projecting outward from a wall and reaching to the ground, as distinguished from an oriel window (similarly projecting but carried upon corbels or brackets) and from a bow-window (curved in plan.)" The essential thing is that it shall be a window, which according to Webster is "an opening in the wall of a building for admission of light and air, usually closed by casements or sashes con-

taining transparent material, as glass, and capable of being opened and shut," and which the Standard Dictionary defines as "an opening in the wall or roof of a building or other structure (as a vehicle) for the admission of light, or of light and air, including, architecturally, the casement, sash, panes, etc." Substantially the same definition was approved in *Hieronimus* v. *Moran, 272* Ill. *254.* The structure in this case does not conform to these definitions, because it is not a window structure but a wall structure in which windows have been placed, the walls, rather than the windows, giving character to the structure. Hall recognized this distinction, for though he testified that in an architectural sense the projections were bay-windows and that he would call any projection from the room a bay-window if there was no division between the room and the bay-window and the bay-window was a part of the room, and it naturally must have some windows in it but there was no rule as to how much or what portion of it should be glass, yet he said, referring to the definition of a bay-window as a window structure of angular plan projecting outward from the wall and reaching to the ground, "those words describe a bay-window if it is part of the room without any division between—an addition to the room—and the words 'window structure' mean that about the biggest percentage of the structure is of glass; that is, mostly of glass." Here considerably more than half the structure was solid wall. The projection of the whole front wall of the building, except about two feet at each end beyond the building line, was held in *Linzee* v. *Mixer,* 101 Mass. 512, to be the breach of a restriction that the front wall of all buildings shall be set back 22 feet from the street, provided that "steps, windows, porticos, and other usual projections appurtenant thereto, shall be allowed in said reserve space of 22 feet," though the erection of such fronts had been common for several years. A bay-window, whether rectangular, polygonal or curved in form, is an appurtenance to a room in-

tended to admit more light and air than an ordinary window. Its purpose is not primarily to increase the size of the room, though incidentally that is frequently the effect of it in some degree. It fills an aperture in the wall of the building as any other window does. The bay-window may be as wide as the room, the projection may extend from the basement to the roof, but it must be a window. The main purpose of the bay-window is to give light and air to the room. The moving forward of the whole front wall of a room, not for the purpose of securing light or air for the room but for the purpose of increasing its area, and constructing the wall as it would have been constructed if the space had not been enlarged, containing the same windows as it would have contained in its original position, does not constitute the additional space gained a bay-window. The four projections in front of the appellee's building violated the restriction establishing the building line for its lot.

The complainant and her husband lived in the same block in which the defendant was erecting the apartment building during the whole time of its construction and except for occasional brief intervals were at home during all that time. Her husband testified that the title to the property stood in the name of his wife and he acted for her in regard to the purchase and in taking care of the property; that his wife lived there with him except for occasional visits out of town; that he represented her in all matters respecting the property and for all purposes represented his wife in the suit; that he was at home when the building was going up and knew about it, saw it many times, saw it before the superstructure was erected, when the foundation was laid, and saw it in its various stages of progress. Mrs. Brandenburg knew, while the excavation was going on, that an apartment hotel was to be built on the property. The construction of the building was begun on April 19, 1925, and continued until its completion, in March or April, 1926. The concrete structure was completed to the sixth floor by

the middle of August, 1925, and the laying of brick and setting of terra cotta on the front of the building was commenced August 13, 1925. The concrete work was finished in September and all mason work in October. The complainant, with knowledge of this work as it progressed, expressed no dissatisfaction and made no protest. The first notice the defendant received of her objection to the building was the service of the summons in this case in July, 1926, three months after the building was completed.

The owner of real estate has the right to convey it subject to any restriction he may see fit to impose, and the only restriction upon such right is that it must be exercised with proper regard to public policy and that the conveyance must not be in restraint of trade. The purchaser from the grantee in a conveyance which imposes upon the grantee restrictions in the use of the land not opposed to public policy will be bound by the restrictions, and equity will enforce them upon equitable principles by injunction against their violation at the suit of any person in whom the right to enforce them is vested. (*Frye* v. *Partridge,* 82 Ill. 267; *Hays* v. *St. Paul M. E. Church,* 196 id. 633; *VanSant* v. *Rose,* 260 id. 401; *Turney* v. *Shriver,* 269 id. 164; *Wiegman* v. *Kusel,* 270 id. 520; *Natural Products Co.* v. *Dolese & Shepard Co.* 309 id. 230.) The particular restriction contained in the respective deeds under which the appellant and the appellee claim title was enforced at the suit of the appellant in the case of *Brandenburg* v. *Lager,* 272 Ill. 622, in which the decree of the circuit court dismissing the appellant's bill was reversed and the cause was remanded, with directions to enter a decree requiring the appellee in that case to remove that part of his structure extending over the building line or to modify it so as to come within the exceptions to the restrictions, the question in that case being whether or not the structure complained of was a porch within the meaning of the exception. It is contended by the appellee that the same result ought not to follow in this case,

even if it be conceded that the structures complained of are not bay-windows within the meaning of the restriction, because the appellant has been guilty of such *laches* as bars her right to relief. Though the appellee's building is a clear violation of the restriction, no damage ,was shown by the evidence to have accrued to the complainant. However, vendors and vendees having the right to agree upon the purpose for which land may be used and the manner of such use, their express covenants in regard thereto will be enforced without proof of damages where facts amounting to an estoppel or *laches* are not shown. (*Hartman* v. *Wells*, 257 Ill. 167; *VanSant* v. *Rose, supra; Loomis* v. *Collins*, 272 Ill. 221.) A purely legal right to a mandatory injunction for a continuous trespass is not barred by lapse of time only, less than the period fixed by the Statute of Limitations. (*Burrall* v. *American Telephone Co.* 224 Ill. 266.) Even a municipal corporation has been held estopped by remaining inactive while large sums of money are expended in the erection of an abutment of a bridge on city property. *Sanitary District* v. *Metropolitan Elevated Railway Co.* 241 Ill. 622.

The right to enforcement of a restrictive covenant in regard to land is not limited to mere preventive action, but will, in a proper case, extend to requiring a defendant to repair an injury already done or remove a structure already erected and restore things to their former condition. It is not every case, however, of a permanent structure which will call for such relief. Each case must be decided upon its own circumstances, (*Brandenburg* v. *Lager, supra,*) and it rests in the sound discretion of the court whether a mandatory injunction shall be granted. The court should consider the relative expense and inconvenience it would cause to the parties and not grant an injunction which will operate inequitably and oppressively. One who seeks equitable relief against interference with an easement must be prompt in doing so. The remedy is subject to the defense

of *laches*—the neglect of the person who knows his right to have been wrongfully invaded to take action with reasonable promptness to protect his right and stop the invasion. Any considerable delay not satisfactorily excused will bar his right to relief, particularly where he seeks by a mandatory injunction to compel the removal of a valuable structure. "The right to enforce a restrictive agreement may be lost by *laches* or acquiescence, especially when this results in the making of expenditures by defendant. * * * That the agreement has but a limited time to run has, in connection with other circumstances, been regarded as a consideration adverse to its enforcement." (2 Tiffany on Real Prop.—2d ed.—sec. 401.) In *DeGama* v. *D'Aquila*, 101 Atl. (N. J. Ch.) 1029, the court said: "It was the complainant's duty, if she intended to insist upon an enforcement of the restrictions, to have acted promptly after she learned of their actual violation by defendant in April and before he had expended any considerable sum of money on the building. * * * It is one of the rules of a court of equity quite strictly enforced on a bill for a mandatory injunction to protect restrictive building covenants, that the application must be promptly made. Complainant's delay, under the circumstances, in taking legal proceedings to protect her rights constitutes such *laches* that I deem it inequitable to grant her the relief she now seeks." "And generally, whenever plaintiff stands idly by and permits the erection complained of to be made and expenses to be incurred therein without objecting, his application for the aid of a court of equity comes too late and will not be entertained. Thus, where purchasers of real estate have bought upon condition that they are to use the land for a specific purpose and none other, they will not be restrained from using it for other purposes when plaintiff has permitted them to go on without objection and to incur large expenses in the work proposed, no sufficient excuse being shown for the delay in invoking the aid of equity. This is the recog-

nized rule in England and this country." (*Orne* v. *Fridenberg*, 143 Pa. 502.) The same principle was applied in *Coates* v. *Philadelphia Young Women's Christian Ass'n*, 245 Pa. 426, and in *Water-Lot Co.* v. *Bucks*, 5 Ga. 315. In the latter case it is said: "As to what constitutes that degree of *laches* which will deprive a party of relief by injunction no positive rule is stated. The authorities on the subject, it is said in Drewry on Injunctions, 197, support the proposition that if the party is cognizant of his right and does not take those steps which are open to him before he has allowed the adversary to incur material expenses or to enter into engagements difficult to be discharged, he will lose his right to the interposition of equity. The conclusion follows that the alleged breach of covenant being attended with no immediate damage to the complainants and the injury to defendants consequent upon the injunction prayed probably great and immediate, the application must be refused the more properly because the complainants have forfeited their title to the relief sought by delay, for which no satisfactory explanation is offered or attempted." In *Smith* v. *Spencer*, 81 N. J. Eq. 393, the complainants were held guilty of *laches* upon the following facts: The complainants having learned of the situation directly after the foundations of the structure complained of had been laid, wrote a letter on October 31, 1911, to the defendant calling his attention to the erroneous location of the building and considerable correspondence followed, but until the filing of the bill on December 18 no proceedings were taken to enjoin the construction which the defendant continued to carry on. The chancellor said: "It was the duty of the complainants under this state of facts to act immediately after they had ascertained what the situation was. [Citing cases.] The complainants cannot, in a situation like this, protect their rights by claiming such rights, however persistently, by mere correspondence. Legal proceedings must be taken before there has been a serious expenditure of

money." The same principle is announced in *Loud* v. *Prendergast,* 206 Mass. 122, and *Lewis* v. *Pingree Nat. Bank,* (Utah) L. R. A. 1916C, 1260.

While no case has been cited in which this court has applied the doctrine of *laches* as a bar to the maintenance of a structure erected and completed in violation of a restrictive covenant, with the knowledge of the complainant but without his protest or any legal proceedings to prevent its erection, yet no case has been found in which a mandatory injunction has been sustained in the absence of protest or legal proceedings by the complainant to prevent the violation where complainant had knowledge of the violation while it was in progress. On the contrary, in the cases in which mandatory injunctions have been sustained requiring the removal, destruction or modification of the construction complained of, the defendant had completed the structure complained of either during the pendency of the suit to enjoin the construction or after notice and protest by the complainants against the violation of their rights complained of, and this fact has been referred to by the court in its opinions as a reason why the mandatory injunction should issue. *Russell* v. *Chicago and Milwaukee Electric Railway Co.* 205 Ill. 155; *Burrall* v. *American Telephone Co. supra; Hartman* v. *Wells, supra; O'Gallagher* v. *Lockhart,* 263 Ill. 489; *Turney* v. *Shriver, supra; Gulick* v. *Hamilton,* 287 Ill. 367.

Since no substantial injury to the complainant's property has been shown and since nearly seventeen years of the twenty-five year period of the restriction had expired at the date of the decree, in view of the neglect of the complainant in permitting the defendant to go on and incur great expense after she had knowledge of the nature of the invasion of the reserved space by its building, her right, after the building was completed, to a mandatory injunction requiring its removal is barred by her *laches.*

The decree is affirmed.           *Decree affirmed.*