LEON HARTMAN, Appellant, *vs.* MARY WELLS *et al.* Exrs. Appellees.

*Opinion filed December 17, 1912—Rehearing denied Feb. 6, 1913.*

1. BUILDING LINES—*when restrictions against use of property will be enforced.* Restrictions against the use of property held in fee are not favored and doubts will, in general, be resolved against them, but where the intention of the parties is clearly manifested in the creation of such restrictions they will be enforced in a court of equity where no recognized defense exists.

2. SAME—*party is bound to take notice of recorded agreement as to building lines.* Where an agreement between the owners of adjoining lots fixing a building line, for a valuable consideration, is acknowledged and recorded, subsequent purchasers of the lots are bound to take notice of the provisions of the agreement and are bound thereby, where nothing has been done which abrogates the agreement.

3. SAME—*when equity will enforce a building line restriction.* Where one of the parties to a valid building line agreement has done nothing to estop him from demanding its enforcement and no change has taken place in conditions which makes the enforcement of the restriction ineffectual to accomplish the purpose thereof, such owner is entitled, in equity, to enforce the terms of the agreement, regardless of the question whether his property will, in the opinion of others, be damaged by the proposed violation.

APPEAL from the Superior Court of Cook county; the Hon. RICHARD E. BURKE, Judge, presiding.

DAVID K. TONE, for appellant.

MAURICE BERKSON, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

The bill in this case was filed by appellant to enjoin appellees from violating a building line agreement entered into between appellant and the grantor of appellees, and for a mandatory injunction to compel appellees to remove certain porches erected in violation of said building line agreement.

The bill alleged that on May 5, 1903, appellant was about to purchase lot 4 in a subdivision of the east 315 feet of the north-east quarter of the north-west quarter of the north-west quarter of section 10, township 38, north, range 14, east of the third principal meridian, in the city of Chicago, and one Simon Lederer was at the same time about to purchase lot 3 in the same subdivision and adjoining lot 4; that for the purpose of establishing a building line on the east end of said lots for their mutual advantage and benefit, appellant and said Lederer executed a building line agreement. The agreement is a lengthy document and is set out in full in the bill. The consideration on the part of appellant for the agreement was the payment by him to Lederer of the sum of $2000 in cash, and an agreement that neither he nor his heirs, personal representatives or assigns would permit any building to be located or erected on or to project over a strip of land five feet wide next to the north line of lot 4, said strip to be forever maintained and kept as an open space for the purpose of affording light and ventilation for buildings that might be erected on said lots 3 and 4. Said agreement bound said parties to it, their respective heirs, administrators and assigns, to establish and forever maintain and keep a building line for the front of said lots, and that no building, or any part of it, should at any time be located or erected or permitted to exist on or project over any portion of said lots east of a line drawn north and south through said lots twenty-five feet west of and parallel with the east line of said lots,

except that bay windows, and vestibules under bay windows, might project not to exceed four feet east of said line, cornices and similar architectural features two feet east of said line, and steps and porches not to exceed nine feet and six inches east of said line, but no porch extending more than four feet east of said line was to be erected above the height of the first story. It was further covenanted and agreed by the parties to said instrument, for themselves, their heirs, executors, administrators and assigns, that an action for damages for the breach of any of the covenants or agreements in said instrument contained might be maintained against either of the parties, their heirs, executors, administrators or assigns, and against any person or persons in possession, occupancy or control of said lots, or either of them, for the violation of any of the agreements, and the further right to enjoin the erection of a building, structure, bay window or porch in violation of the agreement, and also the right, by proper legal or equitable proceedings, to compel the tearing down or removal of any building, bay window or porch built and maintained in violation of the agreement. The instrument was acknowledged and recorded May 18, 1903. The bill alleged that after the execution of said building line agreement appellant purchased said lot 4 and Lederer purchased said lot 3; that afterwards, August 31, 1905, Lederer and wife conveyed lot 3 to Thomas E. Wells; that Wells died August 3, 1910, and that appellees are executors and trustees under his last will and testament by appointment of the probate court of Cook county and are acting as such. The bill further alleged that after the establishment of said building line appellant purchased lot 5, which lies immediately south of and adjoining lot 4; that he erected upon lot 5 a private residence at a cost of more than $50,000, and both lots 4 and 5 were used together as appellant's private residence; that appellant was continuously absent from his home from February 14, 1911, until March 27,

1911; that when he returned home he discovered that during his absence appellees had caused plans and specifications to be prepared for porches, to be built of stone and concrete, on the second and third stories of the building on lot 3 and were then engaged in their construction; that pillars composed of stone or concrete, with a framework composed of stone or concrete, had been completed; that said pillars and framework projected more than nine feet east of the building line, which was five feet beyond the point permitted by the building line agreement; that the floors of the porches were designed to be constructed of concrete, but at the time of appellant's return home temporary floors had been laid of loose, rough boards. The bill alleges appellant told appellees they were violating the building line agreement, and appellees agreed to discontinue the erection of the porches but afterwards resumed work on them. The bill prayed that appellees be temporarily enjoined from work on the said structures, and that upon a final hearing they be perpetually enjoined from building porches or structures in violation of said building line agreement, from using the porches already built in violation of said agreement, and that a mandatory injunction issue to compel appellees to remove the porches and structures built on lot 3 in violation of said building line agreement. A temporary injunction was granted as prayed.

Appellees in their answer to the bill did not deny the building line agreement but denied they had any knowledge of it. The defense relied upon in the answer and now urged is, that the building of the porches is not a damage to the appellant's property but enhances its value; that the structures complained of are practically complete; that they cost to exceed $4500, and improve the value of appellees' and all adjacent property.

The cause was heard in open court by the chancellor and a decree entered finding the facts substantially as al-

leged in the bill, and perpetually enjoining appellees from erecting, or permitting to be erected, buildings, porches or structures contrary to the terms and conditions of the building line agreement and from extending any building or structure farther east than is permitted by said building line agreement, and that they be perpetually enjoined from completing, repairing or rebuilding said second and third story porches, or any part thereof, in front of the building on lot 3 so long as said porches are permitted by appellees to project farther east than the building line agreement permitted. The court refused to grant the mandatory injunction requiring the removal of the structures extending beyond the line authorized by the agreement. For that reason appellant excepted to the decree and has prosecuted this appeal.

The existence of the building line agreement and its violation by appellees are not controverted. They claim they had no actual notice of the existence of said agreement, but it was a matter of record before they or their predecessor in title purchased lot 3, and they were bound to know of its existence. The real defense made by appellees is that appellant's property is not damaged by the porches constructed in violation of the agreement, and that on account of their cost, the material out of which they are constructed and the nature of the construction it would be inequitable to compel their removal. No complaint is made by appellees of the injunction restraining them from completing, repairing or rebuilding said porches, or any part thereof, which project more than four feet east of the building. We are at a loss to understand why, if it was inequitable to require the removal of said structures projecting beyond the building line, it would not also be inequitable and unauthorized to enjoin their completion and maintenance. It is apparent that in their incompleted state they are of little value for use, and if their completion and repairing would be a violation of the agreement authoriz-

ing interference by injunction, it would seem their main-
tenance would be also. Restrictions against the use of
property held in fee, it is true, are not favored, and doubts
will, in general, be resolved against them, but where the
intention of the parties is clearly manifested in the creation
of the restrictions they will be enforced in a court of equity.
(*Eckhart* v. *Irons,* 128 Ill. 568; *Hutchinson* v. *Ulrich,*
145 id. 336; *Hays* v. *St. Paul M. E. Church,* 196 id. 633;
*Curtis* v. *Rubin,* 244 id. 88.) It is true, parties may by
their own acts place themselves in a position where equity
will not interfere, or the property and the uses to which it
may be put and the character of the vicinity and envi-
ronment may be so changed that the purposes for which
the restrictions were imposed will not be effected by their
enforcement. In such cases enforcement may be denied.
(*Ewertsen* v. *Gerstenberg,* 186 Ill. 344; *Curtis* v. *Rubin,*
*supra.*) There was nothing shown as to the use of the
property here involved, its environment or the acts of the
parties which would bring it within the class of cases where
the enforcement of such restrictions has been denied. The
building of the porches was begun without the knowledge
of appellant and when he was absent from home. As soon
as he returned and discovered the building line agreement
was being violated he made known to appellees his objec-
tions. Appellant had kept and performed the covenants on
his part by paying to Lederer the $2000 in cash and giv-
ing lot 3 the benefit of an easement of five feet off the
north side of lot 4 for light and air. All of this appellees
were bound to know, as the agreement was a matter of
record.

The evidence as to whether appellant's property was
damaged by the violation of the agreement was conflicting,
but we do not think that was a material question. In *Con-
solidated Coal Co.* v. *Schmisseur,* 135 Ill. 371, the court,
in discussing the enforcement of negative covenants in
courts of equity, said it was well settled that equity would

entertain bills for injunctions to prevent their breach although the breach would cause no substantial injury or although the damages might be recoverable in an action at law. "This is upon the principle that the owner of land selling or leasing it may insert in his deed or contract just such conditions and covenants as he pleases touching the mode of enjoyment and use of the land. As said in *Steward* v. *Winters*, 4 Sandf. Ch. 587: 'He is not to be defeated, when the covenant is broken, by the opinion of any number of persons that the breach occasions him no substantial injury. He has a right to define the injury for himself, and the party contracting with him must abide by the definition.' (*Hill* v. *Miller*, 3 Paige, 254; *Macher* v. *Foundling Hospital*, 1 Ver. & B. 188; High on Injunctions, 1142.) In this latter class of cases the court proceeds upon the ground that the grantor or lessor having expressly stipulated that the grantee or lessee shall not do the particular thing complained of, the latter is bound to refrain, and the former is not required to submit to the opinions of others as to whether he will or will not suffer substantial injury." That case was cited and quoted in substance in the opinion in *Star Brewery Co.* v. *Primas*, 163 Ill. 652. In *Steward* v. *Winters, supra,* cited in both the last mentioned cases, Vice-chancellor Sandford, delivering the opinion of the court, said: "It is said that the remedy at law for damages is adequate, and that, so far from there being an irreparable injury by the continuance of the breach of this covenant, it is shown there can be no injury at all. I apprehend that we are not to regard this subject in the manner indicated by the latter proposition. The owner of land selling or leasing it may insist upon just such covenants as he pleases touching the use and mode of enjoyment of the land, and he is not to be defeated, when the covenant is broken, by the opinion of any number of persons that the breach occasions him no substantial injury. He has the right to define the injury for himself, and the party con-

tracting with him must abide by the definition." We do not regard it necessary to cite further authority upon this question. None in this State, at least, will be found to the contrary.

In our opinion the case made by appellant entitled him to the mandatory writ prayed for, commanding appellees to remove the structures extending beyond the building line. *Russell* v. *Chicago and Milwaukee Electric Railway Co.* 205 Ill. 155; *Burrall* v. *American Telephone Co.* 224 id. 266; *Bagley* v. *Illinois Trust and Savings Bank*, 199 id. 76; 2 High on Injunctions,—4th ed.—secs. 1150-1158.

The decree is therefore reversed and the cause is remanded, with directions to the superior court to enter a decree as prayed for in the bill.

*Reversed and remanded, with directions.*