## Charles H. Woodburn et al., Appellees, v. John R. Russell, Appellant. George S. Olmstead, Appellee.

### Gen. No. 6,645.

1. EQUITY, § 174*—*what is effect of answer admitting allegations in bill.* A bill to enjoin an encroachment on a building line alleging interest in one complainant, and an answer admitting such interest, dispenses with the necessity of further proof on that point.

2. BUILDING RESTRICTIONS AND REGULATIONS, § 3*—*what constitutes a building.* A billboard 14 feet high with sides 52 feet long is a building within the meaning of a restriction on buildings beyond a certain building line.

3. BUILDING RESTRICTIONS AND REGULATIONS, § 3*—*what considered in determining whether restriction violated.* In determining whether a billboard is a building so as to violate a restriction on buildings beyond a certain building line, the law may take into consideration the object and purpose of the restriction and the nature and effect of the structure.

4. NUISANCE, § 4*—*what constitutes.* A billboard erected beyond an agreed building line in a restricted residential neighborhood is a nuisance.

5. BUILDING RESTRICTIONS AND REGULATIONS, § 4*—*what does not bar enforcement of building-line restriction.* The fact that the complainant, the vendor of lots, moved an old building on one of the rear lots and permitted the defendant to do the same, in violation of the building restriction, does not bar the complainant from enforcing a building-line restriction against the defendant in regard to another lot in a much more choice location in the same subdivision.

6. BUILDING RESTRICTIONS AND REGULATIONS, § 4*—*when substitution of new owners proper in suit to enforce building-line restriction.* In a suit to enjoin the violation of a building-line restriction, it is not error to allow the bill to be dismissed as to parties subsequently disposing of their interest in adjoining lots, and to substitute the new owners.

7. BUILDING RESTRICTIONS AND REGULATIONS, § 4*—*when substitution of parties complainant does not affect decree.* A decree making perpetual the original temporary injunction against violation of building-line restrictions does not refer to the original complainants

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

but to the language of the injunction as against the defendants, and it is immaterial that new adjoining owners have been substituted for the original complainants since the original injunction was obtained.

Appeal from the Circuit Court of Whiteside county; the Hon. FRANK D. RAMSAY, Judge, presiding. Heard in this court at the October term, 1918. Affirmed. Opinion filed February 8, 1919. *Certiorari* denied by Supreme Court (making opinion final).

CARL E. SHELDON, for appellant.

J. J. LUDENS, for appellees.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

In the early part of 1911, Charles H. Woodburn owned about 17 acres of land lying a short distance west of the west limits of the City of Sterling. The tract was oblong and not entirely regular in its boundaries. Its length from north to south much exceeded its width from east to west. The Lincoln highway passed along its south boundary. Woodburn subdivided the tract into 81 lots with streets and alleys, and called the subdivision "Meadow Lawn." The subdivision was intended for residential purposes. He planned to have the lots sold on time with numerous small payments. He prepared and had printed a form of contract, on which such lots were to be sold, the ninth clause of which was as follows: "It is hereby agreed between the parties hereto that they nor their heirs or assigns shall move or cause to be moved on said land or lots any old building, nor build any building closer than thirty feet of front line of said lot or lots." He contracted to convey this property to Goodrich & Goodrich, a real estate firm, and they sold lots under this arrangement, and Woodburn made deeds when they directed. John R. Russell acted as their agent in efforts to sell said lots, and knew of said clause in the contracts. In December, 1911, Goodrich & Goodrich

conveyed their interests back to Woodburn, and he thereafter sold numerous lots. It was intended that said restrictive clause should be in all the deeds, but through some mistake or oversight it was omitted from deeds of five lots. In all other cases it was inserted, both in the contract and in the deed. Lots 1 to 9, inclusive, were on the south end of the subdivision and faced the Lincoln highway. These were the most valuable lots in the subdivision. Woodburn entered into a contract with Fred S. Ivey to sell him Lot 7 on said Lincoln highway and the contract was upon said form and contained said ninth clause. Ivey sold and assigned his contract to John R. Russell. Russell made a verbal contract with George S. Olmstead, whereby he authorized the latter to erect thereon a billboard at a rental of $10 per year, said billboard to remain thereon for one year and as much longer as the party pleased, but Olmstead agreed that if Russell wished to use the lot for other purposes, he would remove the billboard in 30 days. The billboard was to come within about 10 feet of the front of the lot. It was to be built upon poles from 8 to 12 inches in diameter, set deeply in the ground. The sides of the billboard were to be 52 feet and 5 inches in length and to be 14 feet high, and the posts were to project from 18 inches to 4 feet above that. The sides were to be of solid metal or other material. The rear end was to be 14 feet wide and was to be open except for braces across from the top of the poles to the ground, or to posts near the ground. There were to be three rows of stringers on each of the two sides, the first, 2 feet above the ground, the last, 14 feet above the ground, and another in the middle. The structure was to be open to the sky. Olmstead intended to place upon the sides of said billboard, when completed, posters and advertisements of different kinds of business for money consideration, and also advertisements of shows which he was conducting, or intending to conduct. Woodburn learned of this soon after its erection was started and went to

the premises and ordered Olmstead to stop, and he did stop for the time being. Russell was in arrears on his contract and Woodburn sought to forfeit it, but Russell tendered him the full amount due and Woodburn accepted it and deeded said Lot 7 to Russell, but placed in the deed not only said restrictive clause, but also a statement that he was not to be estopped from contending that said covenant applied to the structure then in process of erection on said lot. Russell accepted the deed, and Olmstead then resumed work upon said billboard. Woodburn and the holders of contracts for Lots 6 and 8 next adjacent to said Lot 7 filed a bill for an injunction against Russell and Olmstead to restrain the erection of said billboard as a violation of said covenant. Affidavits were filed in support of and against said injunction and a temporary injunction was granted upon an injunction bond, which was given. Thereafter the holders of said contracts for Lots 6 and 8 disposed of their contracts to Woodburn, and he made another contract for one of said adjacent lots. Thereafter Woodburn and Thomas Darin and Oliver Pittman filed an amended bill against Russell and Olmstead and Mrs. Dosha Russell, wife of Russell. She had a deed of Lot 9 and it did not contain said covenant. It does not appear that she was summoned. She joined in a demurrer to the amended bill, which was overruled, but did not answer, and no further notice of her was taken in the litigation. The cause was referred to a special master, and he took the proofs and made a report favorable to the complainants, except that he reported that the proofs did not show that Darin had any interest and therefore he was not entitled to a decree. Both sides filed objections to said report, which were overruled. The cause was heard before the court on said objections, standing as exceptions, and they were all overruled except the ruling as to Darin. That part of the master's report was overruled and properly, because the amended bill al-

leged Darin's interest and the answer admitted it, so that no proof was necessary as to him. There was a decree making the injunction perpetual and requiring the removal of that part of the billboard which had been put up. Russell appeals from that decree.

The main litigated question is whether said billboard, if completed according to the proposed plan, is a building within the true meaning of said contract. In 9 Corpus Juris, 684-687, and especially in the notes upon said pages, are references to many decisions in many jurisdictions as to the meaning of such a covenant. They show that in some jurisdictions this billboard would be regarded as a building, and in others that it would not. It would serve no useful purpose to discuss those decisions and the reasoning upon which they are founded. Undoubtedly it is true that in customary use the word "building" is most frequently applied to an inclosed structure, intended for the residence of human beings, or as a place where animals may be kept protected from inclement weather, or as a place for the storage of goods. Nevertheless, it is also true that courts will look to the surrounding circumstances and will place themselves in the position of the parties. It is clear from the proof as to the purposes for which this contract was made and for which it was intended that these lots should be sold, that it was thereby intended to establish a building line 30 feet back from the front of the lots and to give the owner of each lot a clear view across the other lots in the same tier and to give free passage for light and air. The proposed structure would be a complete violation of the purposes for which this covenant was inserted in the contracts, and would completely obscure vision for 14 feet above the surface and would in a limited way obscure the light and air. The original and the amended bill each charged that this would be a nuisance, and we are of the opinion that such a structure in a residential neighborhood as this was

designed to be would be a nuisance. Russell not only by virtue of his own contract and deed, but also by the information he obtained as agent for Goodrich & Goodrich in the sale of said lots, was fully advised of the restriction. The proof is clear that such an erection would make all the lots in that tier less valuable for residential purposes and would diminish the price for which they could be sold, and would reduce the ability to sell the other lots. We have reached the conclusion that under the principles laid down in *O'Gallagher v. Lockhart,* 263 Ill. 489, and *Wolf v. Schwill,* 282 Ill. 189, and the cases there cited, this structure must be regarded as a violation of the covenant, and also must be regarded as a nuisance.

Woodburn had previously moved an old house to Lot 71, and it is contended that he thereby barred himself from enforcing the covenant above set out. Lot 71 was at the extreme north end of the subdivision, far distant from Lot 7 and the Lincoln highway, and bearing no relation thereto except that it is in the same subdivision. There was no proof as to the condition of the house or whether it was a desirable residence, or could be made so by the use of paint, and no description whatever of the building, except by the use of the word "old." Russell moved an old building to another lot, remote from the Lincoln highway, and he claims that Woodburn did not object thereto, and that he thereby abandoned the restriction. Woodburn testified that he did strenuously object to that building. We are of opinion that these matters did not prevent the relief sought.

Much criticism is made of the course permitted by the trial court in allowing the bill to be dismissed as to two of the original complainants after they had ceased to have any interest in lots abutting on the Lincoln highway and substituting others as complainants who had acquired their interests in such lots after the original bill was filed. Without discussing in detail the proceedings had on that subject, we think it suffi-

cient to say that we find no reversible error therein. The decree made the original injunction perpetual, and it is contended that that meant an injunction in favor of the original complainants, whereas two of them were not then in the case. This does not refer to the names of the complainants, but to the language of the injunction as against Russell and Olmstead. No error is found in this.

We find no reversible error in the record, and the judgment is therefore affirmed.

*Affirmed.*