Eugene Brown, Appellee, v. Milton N. Pierson, Appellant.

Milton N. Pierson, Appellant, v. Eugene Brown, Appellee.

Gen. No. 7,933.

Opinion filed October 15, 1928.

MILLER, ELLIOTT & WESTERVELT, for appellant; BRUCE E. DWINELL, of counsel.

BARNETT, WILSON & TICHENOR, for appellee.

MR. PRESIDING JUSTICE JONES delivered the opinion of the court.

This is an appeal from a decree of the circuit court of Peoria county, granting an injunction against an alleged encroachment upon a restricted building line, and commanding appellant to remodel his dwelling so as to conform to the building restrictions contained in his deed to the premises.

Eugene Brown and Deloss S. Brown platted a subdivision known as "Fairmount" within the corporate limits of the city of Peoria. Through mesne conveyances, Milton N. Pierson became the owner of lot 17 and a portion of lot 16 in said subdivision. The various deeds in the chain of title from Eugene and Deloss S. Brown to appellant contained certain conditions and restrictions, all of which were required to be kept by the grantees for a period of 25 years from July 16, 1918. Among such restrictions is the following:

"No building shall be erected or used thereon for the sale or manufacture of intoxicants. No garage, stable, shed or building for manufacturing purposes shall be erected thereon nearer than fifty feet of front line.

"The main wall of dwellings on the premises herein conveyed shall be at least twenty-five feet from the front lot line thereof. No dwelling shall be constructed on such lot or lots in this Subdivision unless said dwelling shall exceed in cost the sum of Three Thousand Dollars.

"The foregoing restrictions, covenants and conditions are made for the benefit of the owners and purchasers of any and all lots in said Fairmount Subdivision."

The plat of Fairmount shows that it is laid out on both sides of Summit Boulevard. Some of the lots abut Summit Boulevard; some abut Farmington Road; some abut Main Street; and some abut two of these streets. Summit Boulevard runs generally north and south and its shape is somewhat like a hairpin, the inner portion being reserved mainly as a sodded parkway, leaving the driveways on either side thereof.

The lots owned by Pierson fronted on Farmington Road. At the time the original bill herein was filed, he was constructing a two-story brick dwelling house. Attached to and made a part of the building is a one-story structure, a portion of which is designed to be

used as a sun parlor and the remainder as a porch. It is this sun parlor and porch which are the source of the controversy in this case, as they extend closer to the front line than 25 feet. The corner of the porch nearest Farmington Road on the north is 14.73 feet therefrom, and the corner on the south is 17.6 feet from said road.

There being no dispute as to location, the principal question in the case is whether or not the structure falls within the inhibition of the building restriction. In determining what the extent of a restriction is, the language of the clause creating it must be decisive. The restriction in this case amounts to a prohibition against the erection of main walls of a building within 25 feet of the front line of lots 16 and 17 abutting Farmington Road. The contention between the appellant and appellee is whether or not the walls of the porch are "main walls." It inevitably follows that if they are held to be main walls of the dwelling, they violate the restriction, and if they are held not to be main walls of the dwelling, the restriction has not been violated.

It is therefore necessary to inquire into the structural character of the porch and sun parlor. The dwelling is chiefly of brick construction and is 40 feet in width facing Farmington Road. The porch extends almost the entire width of the building, there being an offset of about 8 inches at both ends of the porch. It is built of the same materials as the rest of the house. In dimensions the porch is approximately 39 feet long and 13½ feet wide. The house does not squarely face the east, but is parallel with Farmington Road, which runs in a northwesterly and southeasterly direction. For the sake of convenience we will speak of the building as facing east and the porch as running north and south.

The sun parlor is on the south and is 16.3 feet by 13.35 feet. It is entirely inclosed with brick walls and

pillars, except that which is provided with windows. The roof over the entire porch is 11 feet from the ground. The walls are brick, 8 inches thick not including the plaster. They begin 18 inches below grade and rest on a footing 12 inches wide and 2 inches thick. There is a door connecting the sun parlor with the two-story part of the house. Immediately north of the sun parlor are steps leading from the porch to the ground in front of the house. At either end of the porch are large brick piers running from the ground to the roof. The open portion of the porch on the north has a brick wall extending above the floor about 2 feet. In symmetry, design and construction, this porch, including the sun parlor, conforms to the rest of the house. The chief variation is that the walls of the two-story portion are 12 inches thick, while the walls of the sun parlor and porch are 8 inches thick. On that account, it is urged by appellant that the walls of the two-story structure are the only ones which can be considered main walls. The restriction applies to main walls only, but it seems to us that in interpreting building restrictions, every wall which supports any part of the structure proper is to be deemed a main wall.

The photographs in evidence, marked exhibits 3 and 4, give a better and more definite idea of the construction than we are able to give. From our examination of the oral and documentary evidence, we have reached the conclusion that the sun parlor and the porch constitute an integral part of the dwelling house or building.

An ordinance of the city of Peoria was introduced, which requires that main walls of two-story dwellings of brick construction shall be at least 12 inches in thickness, and 8 inches in thickness for second or upper story. The superintendent of the department of buildings of the city of Peoria was examined as an expert witness in behalf of appellant. He testified that the main walls of the dwelling in question were the

12-inch walls which support the two-story structure. This testimony was offered for the purpose of defining the term "the main walls" of the dwelling. It was objected to by appellee on the ground that there is no ambiguity in the term "main walls." We think the objection was well taken, but without regard to whether it was or not, the testimony of the witness, when considered in the light of the ordinance above referred to, was of little assistance to the court in determining the meaning of the term.

The ordinance provides that main walls of two-story dwellings constructed of brick shall be at least 12 inches thick for the first floor and 8 inches thick for the second floor. The obvious purpose of the ordinance is to require a wall of a standard thickness, where it is to support an upper story. Where there is no second story to be supported by a wall, the ordinance does not require a thickness of 12 inches. The character of a main wall is not to be determined by whether or not it supports an upper story. If it is a wall which supports an integral part of the building proper, it is to be deemed a main wall. The sun parlor and porch as designed and constructed in this instance are as much a part and parcel of the dwelling as if they had a second story above them and they are not rendered otherwise, simply because their exterior walls are 8 inches thick instead of 12 inches thick.

In determining what is meant by the restrictions contained in a deed, it is proper to look into the circumstances surrounding the parties at the time of its execution and inquire what were the objects and purposes to be subserved. (*Turney v. Shriver,* 269 Ill. 164.) One purpose in establishing a building line is to insure a certain degree of uniformity in the appearance of buildings erected on the property where such line has been established. The establishment of a building line also creates an easement of unobstructed light, air and vision for the benefit of the public and

for the benefit of the owners upon whose property the restricted area is laid out. (*O'Gallagher v. Lockhart,* 263 Ill. 489.) Building line restrictions are generally in the nature of limitations upon the use of property, and will not be enlarged by construction. If there be a doubt as to whether or not the condition has been violated, that doubt must be resolved in favor of the grantee. (*Eckhart v. Irons,* 128 Ill. 568.) Following this principle of law, ordinary porches, bay windows and steps have been held not to be a part of a building proper and accordingly they have been excluded from the operation of the restrictive clause in a deed. (*Hawes v. Favor,* 161 Ill. 440; *Brandenburg v. Lager,* 272 Ill. 622.)

In our judgment, it requires no liberality of interpretation to hold that the walls of a porch such as exist in this case are a part of the main walls of the building. According to our view, it is plain that they are to be so classified. If that be true, their existence is in violation of the building restrictions contained in the deed.

Appellant filed a cross-bill in which he alleged that appellee is the owner of lots 46 and 47 in Fairmount, under a deed which contains the above-mentioned restrictive covenants; that appellee has himself violated such restrictions by erecting a dwelling house on lot 47, within 17 feet of the front line thereof; that he is also the owner of lot 4 in said subdivision under a deed containing the same restrictions; and that he has violated them by erecting a garage within 10 feet of the front line of said lot. The cross-bill prays for an injunction to compel appellee to move the dwelling house on lot 47, so that it will not extend beyond the prescribed building line, and, also, to compel him to move the garage on lot 4 so that it will not extend beyond the 50-foot line prescribed for garages and certain other buildings.

The answer to the original bill set forth the same alleged violations of the restrictive clause by appellee and that it has been generally violated and not observed by others, to wit: Charles Anderson has constructed a garage on lot 3 within 5 feet of the front line thereof; Beulah W. Garrard has constructed a garage on lot 2 within 50 feet of the front line thereof; and Sarah B. Drake has constructed a garage on lot 7 within 50 feet of the front line thereof. The answer also alleges that William B. Winters received a deed from appellee to lots 5 and 6 in said subdivision and that said deed contained no building line restrictions.

With respect to the allegation that appellee has violated the building line restriction on lot 47, the proof shows that the front of the lot is on Summit Boulevard. Its side line is on Main Street. The building objected to is not within 25 feet of Summit Boulevard, although it is within that distance from Main Street. Consequently the structure does not violate the building line restriction.

The topography of lot 4, together with the uses made of that lot and adjoining lots, causes it to also front on Summit Boulevard. The garage complained of is not within 50 feet of the front line of said lot. The same situation obtains with respect to lot 3 owned by Charles Anderson, as well as to lot 2 owned by Beulah W. Garrard and lot 7 owned by Sarah B. Drake. Along Summit Boulevard the elevation of lots 1 to 7 inclusive is much greater than it is along Farmington Road. None of the structures complained of by appellant in any way interfere with the light, air or prospect of adjoining dwellings or violate the letter or the spirit of the building restrictions.

Appellant's contention with respect to the deed to William B. Winters is not well grounded. The deed recognizes that the lot fronts on Summit Boulevard and expressly prohibits the building of any main wall

of a dwelling at a distance less than 25 feet from the lot line thereon.

Under the situation and circumstances shown by the evidence in this case, the chancellor would have been justified in compelling the removal of all that portion of the building used as a sun parlor and porch which extends beyond the 25-foot building line. As it was, he ordered the same to be remodeled, so as to make the portion thereof, which is within 25 feet of the street line, an open porch within a specified time fixed by the decree. Appellee does not complain of the decree in this regard and we are not disposed to modify it.

*Decree affirmed.*