Kenneth M. Piper et al., Plaintiffs-Appellees, v. Robert Reder et al., and John Madro d/b/a Standard Construction Co., Defendants-Appellants, and the Village of Northfield, Illinois, a Municipal Corporation, Defendant.

Gen. No. 49,218.

First District, Third Division.

November 27, 1963.

Rehearing denied January 2, 1964.

L. Louis Karton and Philip D. Goodman, of Chicago, for appellants.

Robert V. Nystrom, of Chicago (Robert V. Nystrom and Herbert Valdenz, of counsel), for appellees.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

This is an interlocutory appeal from a temporary injunction restraining Robert and Bernice Reder from building a home in violation of a building line restriction created by the plat of the Mulberry Hill subdivision in the Village of Northfield, and restraining the village from issuing a building permit for the construction of the home.

The original plat of the subdivision was recorded in 1955. Two building line restrictions were established: one was a thirty-foot restriction from each street line, the other was a ten-foot restriction from each side-lot line. The thirty-foot street line restriction is the one the Reders are enjoined from violating.

The Reders and the plaintiffs, Kenneth and Dorothy Piper, own lots in the subdivision. The two lots are on the south side of Canterbury Lane, a winding street which, at this point, runs east and west. The lots are bounded on the north by Canterbury, on the south by the southern boundary of the village. They are separated by Balmoral Avenue, a north and south street, which crosses Canterbury and continues to the southern end of the lots and of the village, where it is closed by a fence. Pipers' lot is on the southwest corner of Canterbury and Balmoral; Reders' is on the southeast corner. The Piper lot is improved with a home which complies with the thirty-foot restriction

from both Canterbury Lane and Balmoral Avenue. The proposed home of the Reders complies with the Canterbury Lane restriction but not with the one for Balmoral Avenue. This noncompliance brought about the present controversy.

In September 1962, chiefly through the effort of Kenneth Piper, the village enacted an ordinance vacating the section of Balmoral Avenue between the two lots. The Reders did not own the lot east of Balmoral at the time it was vacated. They acquired title to the lot by deed dated December 11, 1962, and began construction of a house thereon pursuant to oral permission obtained from the village building commissioner. Some time thereafter Piper, who had been out of town, noticed that the foundation of the house extended closer than thirty feet to the eastern edge of Balmoral; it was some ten feet west of the building line. Upon being informed of the encroachment upon the building line, the village refused to issue the formal building permit and the construction was discontinued.

Piper refused Robert Reder's repeated requests that he waive his objection, and filed his complaint for temporary and permanent injunctions. The Reders moved to strike the complaint and to dismiss the suit on the ground that the vacation of Balmoral Avenue terminated its existence as a street and terminated the thirty-foot restriction as to that street. The motion was denied, evidence was heard and the temporary injunction was issued.

The motion to strike and dismiss raised the same questions which now confront this court: whether a restrictive covenant, particularly a building line, can be terminated by a change of conditions and, if it can be, whether the vacation of a street is such a change as will cause the termination. We have found no Illinois case directly in point.

■■ Before discussing these questions, it would be appropriate to determine the disposition of the title to street property after a street is vacated by a municipality. Statutory dedication of lands for streets vests the fee to such property in the municipality as long as the property is devoted to the public use. The municipality acquires a determinable fee, which passes by way of conditional limitation to the abutting lot owners when the street is vacated. Prall v. Burckhartt, 299 Ill 19, 132 NE 280 (1921). The Vacation Act (Ill Rev Stats 1961, c 24, § 11–91–2) provides:

> "Except in cases where the deed, or other instrument, dedicating a street or alley, or part thereof, has expressly provided for a specific devolution of the title thereto upon the abandonment or vacation thereof, whenever any street or alley, or any part thereof, is vacated under or by virtue of any ordinance of any municipality, the title to the land included within the street or alley, or part thereof, so vacated, vests in the then owners of the land abutting thereon, in the same proportions and to the same extent, as though the street or alley has been dedicated by a common law plat (as distinguished from a statutory plat) and as though the fee of the street or alley had been acquired by the owners as a part of the land abutting on the street or alley."

This statute means that when a street is vacated, title to the land on which the street was located, with all incidents of ownership, becomes absolute in adjacent lot owners. Their ownership then extends to the middle of the street. People ex rel. Alexander v. City of Mt. Vernon, 404 Ill 58, 88 NE2d 45 (1949); Waterloo Condensed Milk Co. v. Voges, 316 Ill 477, 147 NE 373 (1925). In the instant case the Village of Northfield was compensated for that portion of Balmoral Avenue

434

vacated in September 1962. The western half of the vacated street thereupon became the property of the Pipers; the eastern half became the property of the person or persons who then owned the lot east of the street. The deed received by the Reders in December 1962, passed title to that lot and also to the eastern half of Balmoral. The property they acquired extended their lot line from the eastern edge of Balmoral to the center of the vacated street.

■ Both parties agree that the building line is in the nature of an easement and subject to the rules of law relating thereto. Textbook writers also treat such a restriction as an easement. It is, however, not an easement itself, but merely a restrictive covenant by which an easement for light and air is created. It establishes an easement for the benefit of the public in general and for the benefit of the owners of property fronting upon the street; it also secures uniformity in the location of buildings with respect to the street line. Loomis v. Collins, 272 Ill 221, 111 NE 999 (1916); Simpson v. Mikkelsen, 196 Ill 575, 63 NE 1036 (1902); Fitch, Real Estate Titles in Illinois, sec 356, p 451. The parties disagree, however, as to how an easement can be extinguished. The plaintiffs contend that the only way that the building line restriction could be extinguished would be by a release, abandonment or merger of the dominant and servient estates, and that none of these methods occurred. The defendants' position is that besides release, abandonment and merger, the restriction could be terminated by a change in the conditions of the property; that "the removal of the reason for a restriction renders the restriction unenforcible in equity," and that the vacation of the street has caused the dissolution of the building line appurtenant thereto.

■■ Restrictions which interfere with the free use of property are not favored in the law. Restrictive

435

covenants are to be strictly construed against the subdivider and liberally construed in favor of the builder or owner. If there are any doubts, they must be resolved in favor of natural rights and against restrictions. Staley v. Mears, 13 Ill App2d 451, 142 NE2d 835 (1957); Ewertsen v. Gerstenberg, 186 Ill 344, 57 NE 1051 (1900); Wallace v. Hoffman, 336 Ill App 545, 84 NE2d 654 (1949). Although there is no doubt as to the existence of the building line when the plat was originally recorded, there is doubt, as evidenced by this action, as to its existence after the vacation of the street.

Restrictive covenants respecting buildings will not be enforced where there has been such a change in the character and environment of the property that either the objective of the restrictions cannot be accomplished by their enforcement, or if by such change it would be unreasonable or oppressive to enforce them. Ewertsen v. Gerstenberg, supra; Gilmore v. Keogh, 241 Ill App 28 (1st Dist 1926); Kneip v. Schroeder, 255 Ill 621, 99 NE 617 (1912). In Ewertsen v. Gerstenberg the court stated on page 349:

> "Equity will not, as a rule, enforce a restriction, where, by the acts of the grantor who imposed it or of those who derived title under him, the property, and that in the vicinage, has so changed in its character and environment and in the uses to which it may be put as to make it unfit or unprofitable for use if the restriction be enforced, or where to grant the relief would be a great hardship on the owner and of no benefit to the complainant, or where the complainant has waived or abandoned the restriction,—or, in short, it may be said that where, from all of the evidence, it appears that it would be against equity to enforce the restriction by injunction relief will be denied, and the party seeking its enforcement will be left to whatever remedy he may have at law."

436

The building line was not enforced by the court because it had been disregarded by a number of the other lot owners in the neighborhood. In Gilmore v. Keogh the residential character of a neighborhood had changed because apartment and business buildings had been erected to the street line all along the street. In Kneip v. Schroeder not only had there been other extensions over the building line, but also an elevated railroad had been erected through the block; the court concluded that the situation of the property had so changed that equity would not enforce the building line restriction but would leave the parties to their action at law.

In the present case there has been a marked change in the condition of the property belonging to the plaintiffs and defendants. Formerly their lots were separated by a street; now they adjoin each other. The present boundary line between the lots is the center of the vacated street. Since they adjoin each other they are subject only to the ten-foot, side-lot restriction; they are not subject to the building line restriction because there no longer is a street from which the thirty-foot restriction can be taken. Under this changed condition it would be inequitable to continue to enforce the building line restriction. Building line restrictions are commonly established on property adjacent to a street to create an easement for light and air and to provide uniformity in the location of buildings along the street. The relation between the street and the restriction is such that when the former is vacated, the purposes of the latter cease to exist.

The order is reversed and the cause is remanded with directions to dissolve the temporary injunction.

Reversed and remanded with directions.

SCHWARTZ, P. J. and McCORMICK, J., concur.