PAUL E. FREEHLING *et al.*, Plaintiffs-Appellants, *v.* DEVELOPMENT MANAGEMENT GROUP, INC., Defendant-Appellee.

First District (4th Division)    No. 78-1079

Opinion filed July 26, 1979.—Rehearing denied August 24, 1979.

Clarence J. Walsh, of Chicago, for appellants.

Robert E. Pfaff, of Chicago (Jenner and Block, of counsel), for appellee.

Mr. JUSTICE ROMITI delivered the opinion of the court:

The plaintiffs filed suit in the circuit court of Cook County to enforce a covenant establishing a 15-foot building set-back line. The trial court dismissed the action at the close of the plaintiffs' case. Plaintiffs appeal.

The sole issue is whether a seven-foot fence (as contemplated by defendant) can be considered to constitute "any part of any building" within the covenant establishing the building set-back line.

We reverse and remand for further proceedings.

The facts, as revealed by the pleadings and the plaintiffs' evidence, appear not to be in dispute. The plaintiffs own improved real property at 5440-5442 South Hyde Park Boulevard. At the time the complaint was filed the defendant was the optionee to purchase certain vacant parcels of property at the corner of 54th Street and South Hyde Park Boulevard. Since 1902 there have been restrictive covenants governing the building set-back lines of the buildings on the west side of South Hyde Park Boulevard from 54th to 55th Street. The first was executed on June 5, 1902, and recorded on January 15, 1903. The second, executed on December 19, 1925, and recorded on January 29, 1926, modified the first; it is still in existence and, as admitted by the defendant, governs the property in question. The 1925 covenant provided that in light of certain violations of the previous covenant, thus changing the condition of the neighborhood, and the fact that all buildings located on the described properties are set back at least fifteen feet from the street line and zoning laws so required, a new set-back line would be established. Specifically the parties agreed "that no part of any building shall be placed upon or over said property east of said building line"—the line being established as 15 feet west from the street line. The covenant further provided that:

> "* * * the part of said structure in violation hereof shall be immediately removed by the offending party, upon request of any owner of any of said lots or property upon which said new building line is established so as to make the same conform to the provisions, conditions and requirements of this building line agreement, and upon failure to remove upon request as aforesaid, any owner or owners of any property hereinbefore described, shall have a right of action against the offending party to compel such removal."

It further provided that the agreement would be binding on the property as covenants running with the land and would remain in effect until such time, once 10 years had passed, as a majority of the affected property owners agreed in writing to change it.

The defendant planned to erect on the corner lots a 56-unit development of town houses. The buildings themselves would be properly set back from the street line. However it wished to surround the lots with a fence located right on the property line. Originally it intended to build a brick wall around the property. However, apparently recognizing the difficulties created by the covenant, it decided to change the brick wall to a wood fence. As described by the defendant in his pleading

this will actually be a "series of 13 cedar stockade fences, each 7 feet high, interrupted by 13 wooden gates, or cedar stockade gates, the average fence being 18 feet in length, which fences shall be free standing, and screened with trees, shrubs or bushes on the street side." They will be completely opaque. This is borne out by an illustration in a sales brochure which shows people enjoying a barbeque in a patio surrounded by fence and hedge so thick it looks like a green wall. The public sidewalk would be relocated about 2½ feet east, and the shrubs planted on the exterior side of the fence would be planted in the public way. According to the testimony of defendant's president, the fences were planned because each owner of a town house will use the yard in a variety of ways—some may want a Chinese garden, some a swimming pool, others may want to use it to store canoes or other things in the winter. Accordingly, the planners wanted to screen the area from the view of the general public.

Hyde Park Boulevard from 54th to 55th Street is a longer than usual block. As a boulevard it is also wider than usual. The buildings on the west side are notable in their harmony, the predominant material being red brick. All of the buildings are set back 15 feet from the sidewalk. Thus there is a wide street, wide parkway and a 15-foot set back, all creating a spatial look.

The defendant's sole contention at trial was that the fence did not constitute any part of any building. It did not raise any affirmative defenses. At the close of the plaintiffs' case, the trial court found for the defendant on the ground that the plaintiffs had not shown any deprivation of light or air. The next day it added that there was no breach since the fence was not a part of any of the buildings contemplated.

## I.

■■ Although restrictions on the use of property conveyed in fee are not favored, the court will enforce such restrictions where they are reasonable and not contrary to public policy and are clear and definite. (21A Ill. L. & Prac. *Injunctions* §66 (1977).) As to the court's first reason for its holding, we are not convinced that even assuming there was no deprivation of light or air, the plaintiff would not be injured by the building of the fence. The evidence clearly shows that the residents of the area had preserved the unique character of the street for over half a century. This unique character was created by the carefully created and protected wide open area, enforced by the 15-foot set-back line. Obviously this character, and the spatial appearance of the street would be destroyed by the intended fence.

■■ More importantly, however, it is well settled in Illinois that the mere breach of a covenant is sufficient grounds to enjoin the violation and the plaintiff is not required to show injury. (*Hartman v. Wells* (1912), 257 Ill.

167, 100 N.E. 500; *Van Sant v. Rose* (1913), 260 Ill. 401, 103 N.E. 194; *Hoffman v. Schwan* (1941), 312 Ill. App. 160, 38 N.E.2d 53.) As the court in *Hartman* remarked (257 Ill. 167, 172-74, 100 N.E. 500, 502):

"The evidence as to whether appellant's property was damaged by the violation of the agreement was conflicting, but we do not think that was a material question. In *Consolidated Coal Co. v. Schmisseur*, 135 Ill. 371, the court, in discussing the enforcement of negative covenants in courts of equity, said it was well settled that equity would entertain bills for injunctions to prevent their breach although the breach would cause no substantial injury or although the damages might be recoverable in an action at law. 'This is upon the principle that the owner of land selling or leasing it may insert in his deed or contract just such conditions and covenants as he pleases touching the mode of enjoyment and use of the land. As said in *Steward v. Winters*, 4 Sandf. Ch. 587: "He is not to be defeated, when the covenant is broken, by the opinion of any number of persons that the breach occasions him no substantial injury. He has a right to define the injury for himself, and the party contracting with him must abide by the definition." (*Hill v. Miller*, 3 Paige, 254; *Macher v. Foundling Hospital*, 1 Ver. & B. 188; High on Injunctions, 1142.) In this latter class of cases the court proceeds upon the ground that the grantor or lessor having expressly stipulated that the grantee or lessee shall not do the particular thing complained of, the latter is bound to refrain, and the former is not required to submit to the opinions of others as to whether he will or will not suffer substantial injury.' That case was cited and quoted in substance in the opinion in *Star Brewery Co. v. Primas*, 163 Ill. 652. In *Steward v. Winters, supra,* cited in both the last mentioned cases, Vice-chancellor Sandford, delivering the opinion of the court, said: 'It is said that the remedy at law for damages is adequate, and that, so far from there being an irreparable injury by the continuance of the breach of this covenant, it is shown there can be no injury at all. I apprehend that we are not to regard this subject in the manner indicated by the latter proposition. The owner of land selling or leasing it may insist upon just such covenants as he pleases touching the use and mode of enjoyment of the land, and he is not to be defeated, when the covenant is broken, by the opinion of any number of persons that the breach occasions him no substantial injury. He has the right to define the injury for himself, and the party contracting with him must abide by the definition.' We do not regard it necessary to cite further authority upon this question. None in this State, at least, will be found to the contrary."

## II.

■■ The principal issue in this case is whether the fence contemplated by the defendant constitutes a building or any part of a building. It is true, as the defendant contends, that restrictive covenants are strictly construed. Nevertheless, this rule of construction will not be applied to defeat the obvious purpose of the restriction (7 Thompson on Real Property *Replacement* §3160 (1962)), or the obvious intention of the parties, even though not precisely expressed, and before giving effect to the rule of strict construction the courts will have recourse to every aid, rule or canon of construction to ascertain the intention of the parties. (26 C. J. S. *Deeds* §163 (1956).) Restrictions on the use of property should be given the effect which the expressed language of the covenant authorizes, when considered in connection with the circumstances surrounding the transaction and the object which the parties had in view at the time the instrument was executed; they are interpreted according to the apparent purpose of protection or advantage intended by the parties. 7 Thompson on Real Property *Replacement* §3160 (1962); *Wolf v. Schwill* (1919), 289 Ill. 190, 124 N.E. 389.

■■ The purpose of a building line restriction is to create an easement for unobstructed air, light and vision for the benefit of the public and the owners upon whose property the restricted area is laid out. (*Wolf v. Schwill* (1919), 289 Ill. 190, 124 N.E. 389; *Brown v. Pierson* (1928), 250 Ill. App. 214; *Piper v. Reder* (1963), 44 Ill. App. 2d 431, 195 N.E.2d 224.) Another purpose is to insure a certain degree of uniformity in the appearance of buildings erected on the property where the line is established. *Brown v. Pierson* (1928), 250 Ill. App. 214; *Piper v. Reder* (1963), 44 Ill. App. 2d 431, 195 N.E.2d 224.

The covenant here in effect forbids the erecting of any building or any part of any building. As was stated in 26 C. J. S. *Deeds* §164(1), at 1107-09 (1956):

"Building restrictions are looked on as more in the nature of a protection to the property owner and the public than as a restriction as to the use of property. * * *

* * *

The word 'building,' in its ordinary sense, denotes a structure or edifice inclosing a space within its walls and usually covered with a roof; it does not include every species of erection on land, but means only one intended for use as a habitation, or for some purpose of trade, manufacture, ornament, or use constituting a fabric or edifice, such as a house, store, or shed. However, in its broadest sense it may include any character of structure according to the connection in which it is used and the purpose sought to be effected by its use. The marked tendency of the courts is to

give effect to the intention of the parties, and, in so doing, to extend the meaning of the term to cover structures that ordinarily would not fall within the strict definition of the word. In a restrictive covenant intended to retain to the grantor an unobstructed view, by prohibiting the erection of any building on a certain part of the premises, the word 'building' includes any structure which will obstruct the view."

See also *Netter v. Scholtz* (1940), 282 Ky. 493, 138 S.W.2d 951; *Perkins v. Young* (1954), 266 Wis. 33, 62 N.W.2d 435; 20 Am. Jur. 2d *Covenants, Conditions & Restrictions* §194 (1965).

While there are cases to the contrary (*e.g., Nowell v. Boston Academy of Notre Dame* (1881), 130 Mass. 209), the majority rule appears to be that the word "building" in a restrictive covenant intended to restrain obstruction of a view will include any structure having that effect (*Netter v. Scholtz* (1940), 282 Ky. 493, 138 S.W.2d 951; *Perkins v. Young* (1954), 266 Wis. 33, 62 N.W.2d 435), including fences (*Bagiano v. Harrow* (1929), 247 Mich. 481, 226 N.W. 262; *Wright v. Evans* (N.Y. 1867), 2 Abb. Prac. (n.s.) 308; *MacGregor v. Linney* (1905), 6 Ohio C.C. (n.s.) 524, 27 Ohio C.C. 490, *aff'd without opinion* (1906), 74 Ohio St. 449, 78 N.E. 1130; *Wimer v. Yellin* (1926), 286 Pa. 33, 132 A. 809; Annot., 23 A.L.R. 2d 937 (1952)), even though the fence is not necessarily permanently attached to the property. (*MacGregor v. Linney* (1905), 6 Ohio C.C. (n.s.) 524, 27 Ohio C.C. 490, *aff'd without opinion* (1906), 74 Ohio St. 449, 78 N.E. 1130.) The facts in *Linney* are similar to those here. In *Linney*, the deed provided that the property could be occupied by "one building only and that a family residence" and provided that no part of said residence should extend past a certain line. The provision was held to be violated by the erection of a board fence eight feet high, the court, after considering the situation of the parties at the time the deed was executed and their intention as shown by the use of the word in the light of all the circumstances and the conditions of the property, ruling that the fence did constitute a building within the condition of the deed.

While we have been able to find no case in Illinois considering whether a fence can fall within the scope of a provision prohibiting a building beyond a certain line, it is clear from the reasoning of the court in *Woodburn v. Russell* (1919), 213 Ill. App. 553, and *Wolf v. Schwill* (1919), 289 Ill. 190, 124 N.E. 389, that we must enforce the intention of the parties which was to protect their rights to unobstructed air, light and vision and to insure a certain degree of uniformity in the appearance of the buildings. In *Woodburn*, the covenant prohibited the construction of any building closer than 30 feet from the front line of the lot. The defendant started to erect a billboard. The court acknowledged that normally the word "building" is applied to an enclosed structure. Nevertheless it stated

that the court would look at the surrounding circumstances that the purpose was to give the owner of each lot a clear view across the other lot and to give free passage for light and air, and that the proposed billboard would be a complete violation of the purposes of the covenant. Accordingly, it affirmed the injunction granted by the trial court. *Schwill* was the second of two cases. In the first (*Wolf v. Schwill* (1917), 282 Ill. 189, 118 N.E. 414), the court had held that a wall violated a covenant prohibiting the construction of a "building or erection of any kind * * * except only * * * fences or similar structure." After that decision the defendant replaced the wall with a fence, six feet three inches high except for the supporting columns which were one foot higher. The court while recognizing that the structure was a fence, held it did not fall within the scope of the exemption, stating at 289 Ill. 190, 193, 124 N.E. 389, 390:

> "The purpose of a building line restriction is to create an easement for unobstructed air, light and vision for the benefit of the owners of the property, and the property concerning which the restriction was made in this case is highclass residence property, which is improved with ornate and expensive residences. It is clear that the exception as to the erection of a fence or similar structure was intended to apply to fences of the character ordinarily in use and common to city property similarly situated, which would not materially frustrate the intention of the parties. It is beyond question that the parties to the restriction never thought of permitting such a thing as the structure erected by the appellees, interfering with a practically unobstructed view of the street. The purpose of the contract would be defeated if the appellees should be permitted to erect such a structure within the restricted area as that which has been erected in this case, which has practically the same effect as the brick wall. Whether Mrs. Wolf is compensated by the privilege of looking into a beautiful and artistic garden is immaterial, since she prefers to enforce her right under the covenant."

■■ To conclude, in constructing the covenant, the court must look at its purpose which was to create an easement for unobstructed air, light and vision and to create a certain uniformity in the appearance of the buildings. It appears from the evidence presented by the plaintiff that the fence proposed by the defendant would defeat that purpose and accordingly would violate the covenant.

■■ We therefore conclude that under the plaintiffs' evidence the proposed fence falls within the scope of the covenant in question. Thus the trial court erred in dismissing this action at the close of the plaintiffs' case. Because defendant has not yet presented any evidence on the matter

we must reverse and remand for a new trial to allow the defendant an opportunity to rebut the plaintiffs' evidence.

## III.

■■■ Just prior to oral argument the plaintiffs filed a motion to amend the record to show that the fence had now been constructed and is not freestanding but is permanently bolted to the building. The defendant objected to the motion and we agree that the motion is improper. Supreme Court Rule 329 (Ill. Rev. Stat. 1977, ch. 110A, par. 329) provides for the amendment of the record where there is a material omission or inaccuracies. Since the evidence was not a part of the record below, its omission is not an omission or inaccuracy as to what occurred in the proceedings below. (Compare *People v. Prather* (1977), 55 Ill. App. 3d 54, 370 N.E.2d 831.) Rather, this is a matter of proof at the new trial. We do note, however, that assuming defendant has in fact constructed the fence while the suit and appeal were pending, the defendant cannot defend against an order to remove the fence by claiming that the order is now inequitable since it has expended monies in the construction of the fence. Where a property owner completes the erection of a building while an action to enjoin it as constituting a violation of building restrictions is pending, he acts at his peril and after a finding that the building does violate the restrictions, he may be compelled to remove it or alter it to conform with the restrictions by mandatory injunction. (*Turney v. Shriver* (1915), 269 Ill. 164, 109 N.E. 708.) The covenant gives the plaintiff the right to require a violating structure to be removed; so does the law. *Hartman v. Wells* (1912), 257 Ill. 167, 100 N.E. 500.

For the reasons stated in our opinion we reverse the judgment of the trial court and remand for further proceedings in accordance with the opinion.

Reversed and remanded.

JOHNSON and LINN, JJ., concur.