HAWTHORNE HILLS ASSOCIATION, Plaintiff-Appellee, *v.* JOE
LAWRENCE *et al.*, Defendants-Appellants.

Fifth District   No. 79-385

Opinion filed June 10, 1980.—Rehearing denied July 15, 1980.

John J. Flood, of Clark Law Offices, of Mt. Vernon, for appellants.

Howard & Howard, of Mt. Vernon (G. W. Howard, III, of counsel), for
appellee.

Mr. JUSTICE HARRISON delivered the opinion of the court:

Defendants Joe Lawrence and Security Bank & Trust Company,
Mount Vernon, Illinois, appeal from an order of the circuit court of
Jefferson County enjoining defendant Lawrence to remove a swimming
pool and surrounding deck and a dock from his property, allegedly
constructed in violation of certain of plaintiff's rules and restrictive
covenants, and awarding plaintiff punitive damages in the amount of
$5,383.89. On appeal defendants contend: (1) The rules of the association
were not violated; (2) plaintiff's suit for a mandatory injunction was
barred by a section of the restrictive covenants; (3) the suit was barred by
laches; (4) the injunction places a disproportionate burden upon de-
fendant Lawrence when compared with the benefits secured by plaintiff;
(5) the dock does not violate the rules or covenants; and (6) punitive
damages were improperly awarded in this case. For the following reasons
we reverse.

On August 3, 1976, Lot 32A in Hawthorne Hills Subdivision was
conveyed by a deed in trust to Security Bank & Trust Company, Mount
Vernon, Illinois, as trustee under the provisions of a trust agreement,
defendant Lawrence being the beneficiary. The deed in trust was
expressly made subject to the restrictive covenants contained in a certain

"Declaration of Covenants and Restrictions" executed on July 8, 1970, and recorded on July 13, 1970, and a certain "Amendment to Declaration of Covenants and Restrictions" executed on September 4, 1970, and recorded on September 22, 1970. The relevant restrictive covenant, entitled "Architectural Control Committee; Access; Repair" and appearing in Article VI, states:

"Section 1. Review by Committee. No building, fence, wall or other structure shall be commenced, erected or maintained upon The Properties, nor shall any exterior addition to or change or alteration therein be made, nor shall any substantial change in grade or drainage be commenced, nor shall any improvement or alteration of lake front areas (including Semi-Private Common Areas) be commenced, nor shall any exterior lighting be placed, nor shall any change, alteration or improvement of any buffer zone or Semi-Private Common Area between Lots be commenced until the plans and specifications showing the nature, kind, shape, height, materials, and location of the same shall have been submitted to and approved in writing as to harmony of external design and location in relation to surrounding structures and topography by the Board of Directors of the Association, or by an architectural committee composed of three (3) or more representatives appointed by the Board. In the event said board, or its designated committee, fail to approve or disapprove such design and location within thirty (30) days after said plans and specifications have been submitted to it; or in any event, if no suit to enjoin the addition, alteration or change has been commenced prior to the completion thereof, approval will not be required and this Article will be deemed to have been fully complied with."

Defendants' lot was also subject to "Hawthorne Hill Association Rules," which contained certain setback rules and footage restrictions. They need not be quoted here because the covenants and restrictions which authorized the passage of such rules contain the provision which is dispositive of this case on appeal.

The evidence indicates that between March 1977 and May 1977, Mr. Lawrence constructed a large in-ground swimming pool and surrounding deck behind his home on Lot 32A. On approximately June 10, 1977, he placed a dock in the subdivision lake behind his property. Plaintiff impliedly contests some of these completion dates, but the evidence speaks otherwise. No plans were ever submitted by Lawrence or approved by plaintiff's architectural committee at any time with respect to these improvements which cost defendant over $20,000. On June 21, 1977, plaintiff Hawthorne Hills Association (hereinafter referred to as the Association) instituted this action seeking a mandatory injunction and

punitive damages. Defendants filed their joint answer, and defendant Lawrence counterclaimed, seeking attorney's fees and punitive damages. Numerous witnesses testified and various exhibits were introduced at the bench trial of this case on June 21 and 22, 1979. In order to avoid an undue extension of this opinion, only that matter necessary to the resolution of this case will be referred to below. Following the trial, the trial court granted the mandatory injunction, awarded the Association punitive damages in the amount of attorney's and expert's fees as well as costs, and denied the counterclaim. The injunction was to be complied with within 90 days of issuance, but the trial court stayed enforcement upon the filing of a $5000 bond.

The above-quoted Article VI, Section 1 restriction applicable to defendants' lot clearly calls for the submission and approval of plans respecting any construction to the Association's board of directors or architectural committee. During all relevant times, the Association did have an operative three-person architectural committee. It is undisputed that no plans regarding the pool, deck or dock were ever submitted to the committee prior to their completion. However, Article VI, Section 1, provided for such a situation by stating that "in any event, if no suit to enjoin the addition, alteration or change has been commenced prior to the completion thereof, approval will not be required and this Article will be deemed to have been fully complied with." Since completion of the improvements was had prior to June 21, 1977, the day suit was filed, the Association appears to be precluded from the relief sought.

Defendants had raised this point as an affirmative defense in their answer, but the court ruled that they were estopped from relying on this clause because the Association relied on Lawrence's alleged statement to a member of the architectural committee that he would submit plans for his improvements and obtain approval thereof. Defendant Lawrence denied having this particular conversation. Mr. Ivan Moreton testified via an evidence deposition that he was a member of the architectural committee in 1977. He said he was made aware of construction being performed on Lot 32A and called Lawrence to discuss the matter.

> "Joe answered the phone, and I asked Joe if there was some construction taking place, and he said yes. And I said, 'Well, you know, Joe, I am a member of the Architectural Control Committee. I am asking if you did get an approval to start this work.' He said, 'No, I don't have time.'
>
> And I, being as persuasive or in a requestive manner—cap in hand so to speak—asked Joe to get some plans prepared so that we could avert any problems.
>
> Joe says, 'Oh, all right.' I said, 'Well, Joe, I would like to have the plans as soon as possible so that we can get them approved.' And

Joe says, 'All right. I will get them as soon as possible.' It was like a silence and then the—that was the end of the conversation."

However, when asked the point in time at which it was apparent that Lawrence was not going to submit any plans for approval to the committee, Moreton replied:

"Well, in due respect to Joe, the conversation over the phone, you know, you might say how do I know this, but it didn't seem as though it was going to be very fruitful, you know, just by the snap answers I was getting back."

Moreover, Moreton testified that the committee waited a few days after the alleged phone conversation and decided again to ask defendant Lawrence to submit plans. When asked when the construction was completed, Moreton stated, "It seemed to go on. We didn't really think that this was going to go on long like this. It seemed to go on for maybe a month, two months after." Still no action was taken by the committee with respect to the plans or improvements, which came to fruition prior to the filing of this suit.

We agree with defendants that the Association cannot show reliance on this alleged phone conversation so as to estop them from relying on Article VI, Section 1 of the restrictive covenants. We recognize that the trial court found to the contrary and appreciate that we cannot reverse its decision unless we find it to be contrary to the manifest weight of the evidence. (*Willis v. Rich* (1964), 30 Ill. 2d 323, 328, 196 N.E.2d 676; *Brown v. Zimmerman* (1959), 18 Ill. 2d 94, 102, 163 N.E.2d 518; *In re Application of County Collector* (1978), 66 Ill. App. 3d 437, 448, 383 N.E.2d 1224.) However, the Association cannot claim to have relied on defendant Lawrence's alleged statement when its member to whom such representation was made admittedly placed no reliance on it. The finding to the contrary was against the manifest weight of the evidence.

■■ ■ However, the trial court did hold Article VI, Section 1 to be unambiguous and that but for the alleged representation, the Association's suit would have been barred. With this we agree. Plaintiff, though, disagrees with the trial court's interpretation of that section and suggests that the language "or in any event" refers "to a time starting *after* the submission of plans and specifications" such that the Association has no time constraints to file suit when no plans are submitted. We find such position to be without merit, for by the clear and plain language of the restriction, the architectural committee must approve or disapprove submitted plans within 30 days "*or in any event*, if no suit to enjoin the addition, alteration or change has been commenced prior to the completion thereof, approval will not be required * * *." (Emphasis added.) The Association cannot create an ambiguity or suggest an interpretation which does not exist, in accordance with the well-

established rule that restrictive covenants affecting land will be enforced according to their plain and unambiguous language. (*Freehling v. Development Management Group, Inc.* (1979), 75 Ill. App. 3d 243, 248, 393 N.E.2d 646; *Moore v. McDaniel* (1977), 48 Ill. App. 3d 152, 163, 362 N.E.2d 382.) Therefore, the Association's suit was barred by Article VI, Section 1 of the "Declaration of Covenants and Restrictions."

Defendants also argue that the suit was barred by laches, and that even if this is not true, a balancing of the corresponding hardships induced by the injunction mandate a reversal of the court's order. The Association responds with evidence of defendants' bad faith action and argues that the well-known equitable doctrine which provides for injunctive relief if a defendant has acted in wilful violation of a restriction requires affirmance of the injunction, since the trial court found the actions of defendants to have been wilful and without justification and awarded punitive damages in favor of the Association. We do not believe that these equitable doctrines need be reached. Defendants and the Association were bound by Article VI, Section 1 of the restrictions. If construction was completed prior to the filing of this suit, which it was, then the Association was barred from claiming the relief sought, notwithstanding defendants' intentions. This point being dispositive of the appeal, we need not address the remaining points raised by the parties.

For the foregoing reasons, the order of the circuit court of Jefferson County is reversed and this cause is remanded with directions to enter an order denying the Association's request for a mandatory injunction and punitive damages.

Reversed and remanded with directions.

KARNS and SPOMER, JJ., concur.